Filed 3/20/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CITY OF LOS ANGELES, | B269525 |
| Petitioner, | (Los Angeles County Super. Ct. No. BS156058) |
| v. | |
| SUPERIOR COURT OF LOS ANGELES COUNTY, | **ORDER MODIFYING OPINION (NO CHANGE IN JUDGMENT)** |
| Respondent. | |
| CYNTHIA ANDERSON-BARKER, | |
| Real Party in Interest. | |

THE COURT:

IT IS ORDERED that the opinion filed March 2, 2017 be corrected as follows:

1.  Page 1 Superior Court judge name is **Joanne B. O'Donnell**;

2.  Page 1 City Attorney name is **Gabrielle** L. Ruha;

3. Page 6, last paragraph second line "who had represented **Colleen** Flynn";

4. Page 17, line 4, '[t]he legislative purpose of expediency and immediate reviewability . . . cannot be served by transforming a public record request into a drawn out discovery battle." (*Wilder v. Superior Court* (1998) 66 Cal.App.4th 77, 84.)

The petition for rehearing is denied. The foregoing does not change the judgment.

_____
ZELON, Acting P. J.       SEGAL, J.,       KEENY, J. (Assigned)

Filed 3/2/17 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CITY OF LOS ANGELES, | B269525 |
| Petitioner, | (Los Angeles County Super. Ct. No. BS156058) |
| v. | |
| SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent. | |
| CYNTHIA ANDERSON-BARKER, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Jane L. Johnson, Judge. Petition for writ of mandate granted in part.

Michael Feuer, City Attorney, Carlos De La Guerra, Managing Assistant City Attorney, Debra L. Gonzales, Assistant City Attorney, Blithe Smith Bock and Gabriel L. Ruha, Deputy City Attorneys for Petitioner.

Best Best & Krieger, Shawn Hagerty, Rebecca Andrews and Victoria Hester for The California State Association of Counties, as Amicus Curie on behalf of Petitioner.

No appearance for Respondent.

Donald Cook for Real Party in Interest.

Davis Wright Tremaine, Kelli L. Sager, Dan Laidman and Thomas R. Burke for Los Angeles Times Communications, LLC, The McClatchy

Company, Hearst Corporation, The Reporters Committee for Freedom of the Press, Californians Aware, The California Newspaper Publishers Association, and The First Amendment Coalition, as Amicus Curia on behalf of Real Party in Interest.

_____

Real Party in Interest Cynthia Anderson-Barker filed a petition under the California Public Records Act (Gov. Code, §§ 6250, et seq., (CPRA)) to compel the City of Los Angeles to disclose electronically stored documents and data that contained information relating to vehicles impounded by the Los Angeles Police Department (LAPD).  The City argued that the requested materials did not qualify as "public records" because a private third party owned them.

Prior to the hearing on the petition, Anderson-Barker propounded discovery requests seeking evidence regarding the City's claim that it did not own the materials.  The City asserted a single objection to each discovery request contending that the Civil Discovery Act did not apply to actions brought under the CPRA.  Anderson-Barker filed a motion to compel the City to provide further responses to her discovery.  The trial court granted the motion, concluding that: (1) the Civil Discovery Act applied to CPRA proceedings; and (2) the City had waived any other objections to the discovery requests.  The court ordered the City to respond to the discovery requests without any further objections, and imposed discovery sanctions in the amount of $5,560.00.

The City filed a petition for writ of mandate seeking an order directing the trial court to vacate its order, and enter a new order denying the motion to compel.  We issued an order to show cause, and now grant the City's petition in part.  Although we agree with the trial court's conclusion that the Civil Discovery Act applies to CPRA proceedings, we reverse the remainder of the order, and remand for further proceedings.

2

# FACTUAL BACKGROUND

## A. Background Facts

The Los Angeles Police Department (LAPD) uses privately owned companies to tow and store impounded vehicles.[1] These tow companies are referred to as "Official Police Garages" (OPGs), and perform their services pursuant to written contracts entered into with the City of Los Angeles. Although the City contracts separately with each OPG, the terms of the contracts are materially identical.

Whenever a LAPD officer needs to impound a vehicle, he or she contacts an OPG to tow and store the vehicle. The LAPD officer is required to prepare a "CHP 180 form" that documents the vehicle seizure. The officer and the OPG each retain a portion of the CHP 180 form. The OPG is required to enter certain information regarding the impoundment into a database known as the "Vehicle Information Impound Center" (VIIC). The VIIC is maintained by the "Official Police Garage Association of Los Angles" (OPG-LA), a private organization comprised of tow companies that have OPG contracts with the City. The OPGs are also required to scan their portion of the CHP 180 form into "Laserfiche," an independent document storage company that OPG-LA contracts with to store OPG-related documents.

---

[1] These undisputed "Background Facts" are based on a factual summary set forth in an order issued in *Flynn v. Los Angeles County Superior Court*, Superior Court Case No. BS147850 (*Flynn*), which denied a CPRA petition seeking the same categories of information that are at issue here. As discussed in more detail below, the attorney who filed and litigated the *Flynn* action also represents petitioner Anderson-Barker in this case. The City has filed a request that we take judicial notice of several documents filed in *Flynn*, including the trial court's order denying the CPRA petition. We grant the City's request. (See Evidence Code, § 452, subd. (d) [judicial notice may be taken of the "[r]ecords of . . . any court of record of the United States or of any state of the United States"].) For the purposes of this writ proceeding, these background facts are not disputed.

3

### B. Summary of Prior Litigation Seeking Disclosure of VIIC Data and Laserfiche Scans

On March 10, 2014, Colleen Flynn submitted a written request to the LAPD seeking "the following electronically stored data: [(1)] All data recorded in [the VIIC] database. [(2)] All documents as scanned into Laserfiche regarding vehicle seizures. . . ." Although Flynn's request acknowledged that the VIIC data and Laserfiche scans were "stored in systems maintained by [OPG-LA]," she asserted that the materials qualified as "public records" because the City's "contracts" with OPG-LA and the OPGs provided it the right to "access and possess" the materials.

The LAPD declined Flynn's request. In a letter, the LAPD explained that the materials Flynn had requested did not qualify as "public records" within the meaning of the CPRA because OPG-LA maintained the computer systems that stored the VIIC database and the Laserfiche scans. Although the LAPD admitted it had authority to "access" the VIIC data and Laserfiche scans "for the purpose of conducting necessary law enforcement investigations," it asserted that such access did not qualify as "ownership" of those materials, or otherwise transform the materials into public records. The LAPD further asserted that even if the requested materials qualified as public records, they were subject to numerous exemptions set forth in the CPRA.

On March 27, 2014, Flynn's attorney, Donald Cook, filed a petition for writ of mandate pursuant to Government Code section 6258[2] seeking to compel the City of Los Angeles to disclose the VIIC data and the Laserfiche scans. The petition alleged that the materials qualified as "public records" under the CPRA, and that there was no "lawful or proper reason for [the City's] refusal to provide the records. . . ." The City opposed the petition, asserting that it did not own the materials in question. The parties presented evidence in support of their respective positions, which included a declaration from LAPD detective Ben Jones and samples of contracts entered into between the OPGs and the City.

---

[2]    Unless otherwise noted, all further statutory citations are to the Government Code.

4

In its briefing, Flynn argued that the following provision set forth in an attachment to the OPG contracts established that the City owned the VIIC data and the Laserfiche scans: "Unless otherwise provided for herein, all documents, materials, data and reports originated and prepared by CONTRACTOR under this contract shall be and remain the property of the City." The City, however, argued that a separate provision set forth in section 14.3 of the OPG contracts clarified that the OPG was to "retain . . . the VIIC and Laserfiche records," and that the City was only permitted inspect the records for "purposes of audit . . . and law enforcement." In the City's view, this language demonstrated that it did not own the materials, and was only allowed to access the information for limited purposes.

The court agreed with the City, explaining that the provision Flynn had relied on provided the City ownership of all work product the OPGs had produced under their contracts with the City "'unless otherwise provided for' in the OPG contract." The court further explained that "[section] 14.3 meets the 'otherwise provided for' requirement, thereby negating [the ownership provision set forth in the attachment provision]." The court also noted that the OPG contracts described the two circumstances under which the City could access the VIIC data and the Laserfiche scans (audit and law enforcement), which would have been unnecessary if the City owned those materials.

The court additionally concluded that evidence regarding the City and the OPGs' "contract performance" demonstrated that the parties had "always interpreted their contract as vesting ownership [of the VIIC data and the Laserfiche scans] in the OPGs." In support, the court cited a statement in the declaration of LAPD detective Ben Jones asserting that the City "ha[d] [previously] obtained a search warrant when it wanted physical possession of the records stored at Laserfiche, even though [section] 14.3[] gives law enforcement a right of access." The court found that such conduct was "powerful evidence that the parties have performed the OPG contracts with the intent that the OPGs own the information in VIIC and Laserfiche."

Flynn filed a petition for writ of mandate pursuant to section 6259, subdivision (c) seeking immediate review of the trial court's order. On

5

February 20, 2015, Division One of this District denied the petition. Flynn then filed a petition for review in the California Supreme Court, which the Court denied in April of 2015.

### C. Summary of Proceedings in the Present Matter

On June 4, 2015, petitioner in the current action, Cynthia Anderson-Barker, submitted a request to the LAPD seeking the disclosure of a portion of the information Flynn had previously sought. Specifically, Anderson-Barker requested that the LAPD disclose: (1) "All data recorded in [the VIIC] database, for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 form was prepared"; and (2) "All CHP 180 forms for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 was prepared. This includes, but is not limited to documents that are indexed in Laserfiche. . . ."

In response, the LAPD informed Anderson-Barker it would "respond to [the] portion of [her] request" that sought copies of CHP 180 forms (or portions thereof) located in the LAPD's investigative files. The LAPD declined, however, to disclose any VIIC data or Laserfiche scans, explaining that OPG-LA and the OPGs owned and maintained those materials. The LAPD further explained that "the issue of whether the information in the VIIC database and the documents in the Laserfiche system constituted 'public records' under the CPRA [had been] vigorously litigated in [the *Flynn* action]." The LAPD noted that after receiving extensive evidence and briefing, the trial court in *Flynn* had ruled the requested materials were not "public records" within the meaning of the CPRA, and that the California Court of Appeal had denied a petition for writ of mandate seeking reversal of that decision.

On June 18, 2015, Anderson-Barker, represented by the same attorney who had represented Deborah Flynn (Donald Cook), filed a petition for writ of mandate pursuant to section 6258 seeking to compel the City of Los Angeles to disclose the VIIC data and the Laserfiche scans. The petition asserted that the City's "claim that it does not 'own' the requested public records is false, and [the City] knows its claim is false." According to the petition, the written contracts between the City and the OPGs made clear that the

6

requested information belonged to the City, rather than the OPGs or OPG-LA.

The petition further asserted, on information and belief, that "in claiming [the City] does not 'own' the requested public records at issue, [the City's agents] have committed perjury and have suborned perjury." The petition alleged that the declaration detective Ben Jones had submitted in the *Flynn* action falsely asserted that the LAPD had sought search warrants to obtain VIIC data or documents stored in Laserfiche. The petition further alleged, on information and belief, that: (1) the City "has never sought a search warrant to obtain VIIC date or CHP 180 forms as stored in Laserfiche"; and (2) the city attorney who drafted Jones's declaration had done so "for the purpose of deceiving the *Flynn* court as to the ownership of VIIC data and CHP 180 forms stored in Laserfiche."

After the City filed its answer to the petition, Anderson-Barker propounded several forms of discovery on the City seeking information related to: (1) the City's claim that it did not own the VIIC data or the Laserfiche scans; and (2) detective Jones's statement that the LAPD had previously obtained search warrants to secure such materials. The discovery included (among other things) nine written interrogatories, 16 requests for admission and an inspection demand requesting the production of 40 categories of documents.[3] In response to each discovery request, the City asserted a single, identical objection stating that the petitioner was not permitted to "propound discovery as a matter of right in the instant writ of mandamus action. The exclusive procedure for litigation under the [CPRA] is contained in Government Code sections 6258 and 6259."

On October 7, 2015, Anderson-Barker filed a motion to compel responses to her discovery. Anderson-Barker argued the discovery was

---

[3] The request for production sought a wide range of documents including, for example: all writings "showing that . . . [the City] considered" the OPGs to be the owners of the VIIC data and the Laserfiche scans; "[e]ach and every [search] warrant" referred to in the Jones declaration; all writings and documents regarding the drafting and amendment of various provisions in the OPG contracts; and "each and every writing concerning" the creation, storage and ownership of the VIIC data and the Laserfiche scans.

7

necessary to demonstrate that the City did in fact own and control the VIIC data and the Laserfiche scans, and that it had "committed and suborned perjury" in the *Flynn* action by filing a declaration that falsely claimed the LAPD had obtained search warrants to access information stored in the VIIC or Laserfiche. Anderson-Barker also argued the City's sole objection to each discovery request—that the Civil Discovery Act did not apply to CPRA proceedings—was "wrong" as a matter of law. According to the petitioner, the Civil Discovery Act applied to any "special proceeding of a civil nature," and the CPRA qualified as a special proceeding. Petitioner further asserted that "because the only objections raised in the City's initial responses were that [the Civil Discovery Act is inapplicable to CPRA proceedings]," the court should order the City "to respond to [the] discovery requests . . . [without further] objections. All other objections have been waived." Finally, Anderson-Barker requested that the court impose discovery sanctions because the City had failed to show "substantial justification for refusing to produce the requested data and documents."

In its opposition, the City argued that the language and intent of the CPRA demonstrated that the Civil Discovery Act was inapplicable to CPRA proceedings. In support, the City relied on language in section 6259, subdivision (a) stating: "The court shall decide the case after examining the record in camera, . . . papers filed by the parties and any oral argument and additional evidence as the court may allow." The City argued that section 6259 authorized the "trial court . . . to request any additional evidence that [the] court deems necessary to make a proper ruling. That is a far cry from allowing a party to import all the discovery provisions of the Civil Discovery Act [in]to a CPRA [proceeding]." The City explained that if the Legislature had intended the Civil Discovery Act to apply, it would have included explicit language in the CPRA. The City further asserted that allowing full-scale discovery in CPRA proceedings was inconsistent with the Legislature's intent that such proceedings be resolved in an expedited manner.

The City also argued that even if the court found "section 6259 provides some discretion to allow [a petitioner] to propound discovery," it should deny Anderson-Barker's discovery requests because they were duplicative of discovery she had obtained in prior lawsuits. The City explained that

8

Anderson-Barker and her attorney, Donald Cook, served as co-counsel in multiple lawsuits challenging the vehicle impound practices of various California law enforcement agencies, including the LAPD.[4] A city attorney who had assisted in the defense of those actions provided a declaration stating that Anderson-Barker and Cook had "conducted broad discovery" in those cases related to "VIIC data, Laserfiche documents, OPG contracts, and many issues relating to the LAPD vehicle impounds." The declaration further asserted that Cook had previously conducted two depositions of detective Jones, which included questions regarding the "VIIC database, Laserfiche documents, OPG contracts, and use of court orders and/or search warrants to obtain OPG records."

Finally, the City argued that if the court intended to allow Anderson-Barker to proceed with her discovery, it should allow the City to assert further objections to each of her requests: "The City's objection to all of the propounded discovery is that [p]etitioner is not entitled to conduct discovery in a CPRA action because the Legislature did not make the Civil Discovery Act applicable to such actions. It would be illogical to object to discovery but at the same time also engage in the discovery process by asserting any and all other objections that might be applicable under the Civil Discovery Act. The threshold issue in this case is whether the CPRA incorporates the Civil Discovery Act into section 6258 and 6259. As explained above, it does not. However, if this court disagrees and orders the City to respond to the propounded discovery, the City must be able to assert any and all appropriate objections."

On December 16, 2015, the court held a hearing on the motion to compel. The city attorney argued that although the CPRA authorized the trial court to obtain evidence from the parties, it did not allow "full blown

---

[4] One of those cases resulted in a published decision, *County of Los Angeles v. Superior Court* (2015) 242 Cal.App.4th 475, which reversed a trial court order requiring the County to disclose "'[as] stored electronically . . ., all completed CHP 180 forms, from January 1, 2012 to the present." (*Id.* at p. 480.) In its decision, the appellate court noted that "Anderson-Barker's attorney, Donald W. Cook, has sued various California law enforcement agencies over their respective practices of impounding vehicles under Vehicle Code section 14602.6." (*Id.* at p. 479.)

civil discovery." Petitioner's counsel, however, argued that discovery was permitted in CPRA proceedings when necessary to resolve factual disputes regarding the agency's disclosure obligation. According to counsel, the question whether the City owned the information it was refusing to disclose should be decided based on "the factual evidence of ownership," and not on the City's self-serving statements. The Court concluded that "discovery should . . . be permitted," but clarified that "the only issue raised . . . by this particular motion is the question whether discovery is available under the CPRA. . . . [T]o decide that issue, the court doesn't have to go to [the] question whether the discovery was necessary or not, so the court hasn't addressed that issue in its . . . ruling."

Following the hearing, the court issued a written order explaining that the CPRA qualified as a "special proceeding of a civil nature," and was therefore subject to the Civil Discovery Act. According to the court, the fact that the CPRA did not expressly provide for discovery was irrelevant because, by its terms, the Civil Discovery Act "automatically applies to [all] actions of a civil nature regardless of whether the statue giving rise to the cause of actions specifically incorporates its provisions." The court further ruled that the City had waived any further objections to the petitioner's discovery requests by failing to raise them in its initial discovery responses. The court also imposed sanctions on the City in the amount of $5,560.00, explaining that the City's refusal to respond to the discovery requests was "not substantially justified."

On January 13, 2016, the City filed a request for stay of proceedings and a petition for writ of mandate directing the trial court to vacate its order, and enter a new order denying the petitioner's motion to compel. We stayed the trial court's order, and requested that the petitioner file opposition to the writ of mandate. After receiving the opposition, we issued an order to show cause.

## DISCUSSION

### A. *Availability of Writ Relief and the Standard of Review*

As discussed in more detail below, we are not aware of any prior decision that has addressed whether the Civil Discovery Act applies in CPRA

10

proceedings. "Writ review is appropriate in discovery matters where, as here, it is necessary to address 'questions of first impression that are of general importance to the trial courts and to the [legal] profession, and where general guidelines can be laid down for future cases.' [Citation]." (*People v. Superior Court* (*Cheek*) (2001) 94 Cal.App.4th 980, 987 (*Cheek*).) Generally, "[t]he standard of review for a discovery order is abuse of discretion, because management of discovery lies within the sound discretion of the trial court." (*Ibid.*) However, when "the propriety of a discovery order turns on . . . a question of law," we "determine the issue de novo." (*Gilbert v. Superior Court* (2014) 224 Cal.App.4th 376, 380.)

## B. Summary of the CPRA

"The CPRA was modeled on the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552 et seq.) and was enacted for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies. [Citation.] The Legislature has declared that such 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' (Gov. Code, § 6250.)" (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425-426 (*Filarsky*).) The Act defines "public record" to include, in relevant part, "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (e).) The term "writing" includes, among other things, "handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored." (§ 6252, subd. (g).)

"A state or local agency, upon receiving a request by any person for a copy of public records, generally must determine within 10 days whether the request seeks public records in the possession of the agency that are subject to disclosure. (§ 6253, subd. (c).) If the agency determines that the requested

11

records are not subject to disclosure, for example because the records fall within a statutory exemption [citation], the agency promptly must notify the person making the request and provide the reasons for its determination. (§ 6253, subd. (c).)" (*Filarsky*, *supra*, 28 Cal.4th at p. 426.) "The Act sets forth numerous categories of records [that are] exempt from compelled disclosure. [See §§ 6254-6254.33.] In addition, section 6255 establishes a 'catchall' exemption that permits the government agency to withhold a record if it can demonstrate that 'on the facts of a particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record.'" (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1338 (*Times Mirror*) [emphasis omitted].)

Sections 6258 and 6259 "set[] forth specific procedures for seeking a judicial determination of a public agency's obligation to disclose records in the event the agency denies a request by a member of the public." (*Filarsky*, *supra*, 28 Cal.4th at p. 426.) Section 6258 provides: "Any person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under [the Act]." "After a person commences such a proceeding, the court must set the times for responsive pleadings and for hearings 'with the object of securing a decision . . . at the earliest possible time.' (§ 6258.) If it appears from the plaintiff's verified petition that 'certain public records are being improperly withheld from a member of the public,' the court must order the individual withholding the records to disclose them or to show cause why he or she should not do so. (§ 6259, subd. (a).)" (*Filarsky*, *supra*, 28 Cal.4th at p. 426.) Section 6259 further provides that the court shall decide whether to order disclosure "after examining the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and any oral argument and additional evidence as the court may allow."

"The court's order either directing disclosure by a public official or supporting the decision to refuse disclosure 'is . . . immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ' filed within 20 days after service of the notice of entry of the order, or within an additional 20 days as the trial court may allow for good cause. (§ 6259, subd.

12

(c.).)" (*Filarsky*, *supra*, 28 Cal.4th at p. 426.) This expedited appellate review provision, and the CPRA's provisions obligating the public agency "to act promptly upon receiving a request for disclosure (§ 6253, subd. (c)), . . . [and] directing the trial court . . . to reach a decision as soon as possible (§ 6258), . . . all reflect a clear legislative intent that the determination of the obligation to disclose records requested from a public agency be made expeditiously." (*Id.* at p. 427.)

### C. The Civil Discovery Act Applies to CPRA Proceedings

#### 1. A CPRA proceeding qualifies as "a special proceeding of a civil nature" to which the Civil Discovery Act applies

Although the petitioner and her amicus have identified prior CPRA cases in which the parties conducted discovery,[5] neither party has identified, nor have we found, any decision that has analyzed whether the Civil Discovery Act (hereafter the discovery act or the act) actually applies to CPRA proceedings. The issue thus appears to be a matter of first impression.

The CPRA does not contain any reference to discovery or the discovery act. By its terms, however, the discovery act applies to both "civil action[s] and . . . special proceeding[s] of a civil nature." (See Code of Civil Proc.,

---

[5]     For example, in *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379 (*Bernardi*), the petitioner sought public records from the County of Monterey relating to a subdivision proposal. The appellate court's factual summary indicates that the petitioner issued a notice of deposition of a third party who had served as "the County's [Environmental Impact Report] consultant on the [subdivision proposal]." (*Id.* at p. 1386.) The County filed a motion to quash the deposition. The court granted the motion in part, permitting the petitioner to depose the witness "for the limited purpose of clarifying which documents held by [the third party] ha[d] been 'prepared, owned, used, or retained' in connection with the [subdivision proposal]." (*Ibid.*) The court subsequently appointed a special master to oversee additional discovery. (*Ibid.*) Amicus for petitioner has also identified several trial court proceedings in which the parties conducted discovery in relation to a CPRA claim. The City does not dispute that discovery occurred in these matters, but asserts that none of the cases addressed whether the petitioner in a CPRA proceeding has a right to seek discovery pursuant to the provisions set forth in the Civil Discovery Act.

13

§§ 2017.010 & 2016.020, subd. (b) [permitting "discovery . . . in the pending action," and defining "action" to "include[] a civil action and a special proceeding of a civil nature"]; see also *People v. Yartz* (2005) 37 Cal.4th 529, 537 (*Yartz*), fn. 4 ["the 1986 Civil Discovery Act applies to either a civil action or a special proceeding"].)  Our courts have interpreted this language to mean that, absent a statutory exemption precluding discovery, the discovery act applies "to every civil action and special proceeding of a civil nature."  (*Leake v. Superior Court* (2001) 87 Cal.App.4th 675, 682 (*Leake*) ["the [discovery act] applies to every civil action and special proceeding of a civil nature (absent, of course, a statutory exception)"] [disapproved of on other grounds in *Yartz, supra,* 37 Cal.4th 529]; *Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1019 (*Property Reserve*) [absent the "legislature's enact[ment of] a statute precluding discovery," the discovery act applies to every action or special proceeding of a special nature]; *Cheek, supra,* 94 Cal.App.4th at p. 988 [discovery act applies in civil actions and "special proceeding[s] of a civil nature" that are otherwise "silent regarding discovery"].)

"An 'action' is defined as 'an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.'  [Citations.]"  (*Yartz, supra,* 37 Cal.4th at p. 536.)  A "special proceeding," in contrast, is a """type of case which was not, under the common law or equity practice, either an action at law or a suit in equity. [Citations.]"  [Citation.]  Special proceedings instead are established by statute.  [Citations.]  The term . . . applies only to a proceeding that is distinct from, and not a mere part of, any underlying litigation.  [Citation.]  The term "has reference only to such proceedings as may be commenced independently of a pending action by petition or motion upon notice in order to obtain special relief.  [Citations.]"  [Citation.]'  [Citation.]"  (*Property Reserve, supra,* 6 Cal.App.5th at p. 1019 [citing and quoting *People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 725]; see also *Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 822.)

A CPRA proceeding falls within the definition of a "special proceeding of a civil nature."  The proceeding is not an action at law or a suit in equity,

14

but rather is established strictly by statute, and may be commenced independently of a pending action. (See *Los Angeles Police Dept. v. Superior Court* (1977) 65 Cal.App.3d 661, 669 [describing CPRA action as "a special proceeding the sole object of which is the discovery and production of records"].) Moreover, a CPRA proceeding is clearly "civil in nature," as it is "wholly unrelated to any criminal case." (*Moore v. Superior Court* (2010) 50 Cal.4th 802, 815 [explaining that commitment proceeding under the Sexually Violent Predator Act is "civil in nature" because it is "wholly unrelated" to any criminal case].) Because the CPRA qualifies as a special proceeding of a civil nature, and the Legislature has not included any exemption precluding discovery in such proceedings, we conclude that the discovery act applies.

The City does not dispute that the discovery act generally applies to all special proceedings of a civil nature, nor does it dispute that an action brought under the CPRA falls within the traditional definition of a "special proceeding." It contends, however, that several aspects of the CPRA "confirm[]" the Legislature did not intend the discovery act to apply. First, it asserts that "nothing in the CPRA mentions civil discovery at all, and it is well established that 'legislative silence' . . . connotes a legislative intent not to include the omitted provision." According to the City, "[t]he Legislature was fully capable of providing for or even mentioning discovery or the Civil Discovery Act, and yet it chose not to do so. . . ."

Our courts have repeatedly concluded, however, that the discovery act applies to statutorily-enacted special proceedings that are silent with respect to discovery. For example, in *Leake, supra,* 87 Cal.App.4th 675, the court held that the discovery act applied to civil commitment proceedings initiated under the Sexually Violent Predator Act (SVPA) despite the absence of any express provision within the SVPA regarding discovery. The court explained that the text of the discovery act states that it applies to all forms of "civil actions and special proceedings of a civil nature," demonstrating that the Legislature "intended to apply civil discovery" to all forms of civil actions and special proceedings that do not contain an exemption from discovery. (*Id.* at pp. 680, 682.) Other cases have reached a similar conclusion. (See *Cheek, supra,* 94 Cal.App.4th at p. 988 [finding discovery act applicable to special proceeding that was "silent with regard to discovery rights"]; *Property*

15

*Reserve, supra,* 6th Cal.App.5th at p. 1019 [concluding that discovery act applied to special proceeding that did not include any provision "preclud[ing] discovery"].) We agree with the analysis of these decisions.

The City next contends that the language of section 6259 demonstrates the Legislature did not intend discovery to be available in CPRA proceedings. Section 6259 states, in relevant part: "The court shall decide the case after examining the record in camera, . . . papers filed by the parties and any oral argument and additional evidence as the court may allow." According to the City, the phrase "additional evidence as the court may allow" indicates that the Legislature intended "the trial court, not the parties, [to] direct[] [any] exchange of information between the parties." As stated in its briefing, the City contends that while "[t]here may indeed be instances where courts require additional information beyond the parties' initial briefs and evidence to determine whether records have been withheld properly, . . . it is the judge – not the records requester – who leads this inquiry where it is necessary to test the agency's claims." Thus, the City essentially argues that section 6259 provides the trial court exclusive authority to request any evidence beyond that which the parties have voluntarily provided, precluding the parties from seeking discovery directly against one another.

We do not agree with the City's interpretation of section 6259, which merely describes the categories of evidence the court may admit and consider when determining whether to order disclosure. Although section 6259 appears to provide the court broad discretion to decide what "additional evidence" it will consider when deciding the matter, the statute contains no language indicating that parties are prohibited from conducting civil discovery. If the Legislature had intended to exempt CPRA proceedings from the discovery act, it could have included a statutory exemption or other language limiting the scope of discovery. We decline to read such an exemption into the CPRA based on a provision that simply authorizes the court to "allow" the parties to present "additional evidence" beyond that presented in their "papers."[6]

---

[6] During oral argument, the City appeared to take a slightly narrower position, asserting that while section 6259 does not categorically preclude discovery in a CPRA proceeding, the language of the statute indicates that

16

Finally, the City argues that providing discovery rights in CPRA proceedings "is directly contrary to the Legislature's main goal of providing expediency in the public records process." According to the City, "common sense dictates that the '[t]he legislative purpose of expediency cannot be served by . . . . transforming a public record request into a draw out discovery battle.'" We find this argument unpersuasive for several reasons. First, we reject the assertion that discovery is necessarily incompatible with "expediency." As discussed in more detail below, the trial court in a CPRA proceeding retains authority to manage and limit discovery as necessary. Second, contrary to the City's assertion, expediency is not the "main goal" of the CPRA. Rather, "the core purposes of the CPRA are to prevent secrecy in government and to contribute significantly to the public understanding of government activities." (*Fredericks v. Superior Court* (2015) 233 Cal.App.4th 209, 223; see also *Filarsky, supra,* 28 Cal.4th at p. 425 [purpose of CPRA is to "increase[e] freedom of information by giving members of the public access to information in the possession of public agencies"].) Where appropriate, discovery will further these core purposes by allowing the public to seek evidence that tests an agency's asserted reasons for declining to disclose a requested document. Third, the legislative goal of expediency does not alter the fact that the CPRA contains no provision that exempts such proceedings from discovery. In the absence of such an exemption, we must presume the Legislature believed that discovery was not an impediment to expediency.

### 2. *The trial court retains discretion to determine the permissible scope of discovery in CPRA proceedings*

Although we conclude the discovery act applies to CPRA proceedings, the right to discovery nonetheless "remains subject to the trial court's authority to manage and limit discovery as required." (*Cheek, supra,* 94

---

the trial court, rather than the parties, is responsible for issuing whatever discovery requests it believes are necessary to decide the case. As discussed above, however, neither section 6259 nor any other provision in the CPRA contains any language referencing discovery. We must therefore presume that the legislature intended the procedures set forth in the discovery act, including those that allow the parties to initiate discovery requests, to apply in the context of the CPRA.

Cal.App.4th at p. 988 ["the right to civil discovery in a special proceeding of a civil nature remains subject to the trial court's authority to manage discovery"]; *Property Reserve, supra*, 6 Cal.App.5th at p. 1019 [explaining that although the discovery act applies to statutory precondemnation proceedings, the "trial court of course may exercise its conventional authority to limit discovery as required"]; *Bouton v. USAA Casualty Ins. Co.* (2008) 167 Cal.App.4th 412, 427 (*Bouton*) [parties in a special proceeding to compel arbitration "have discovery rights under the [discovery act], subject to the relevancy requirement and other provisions limiting the scope and timing of that discovery"].)

The general scope of discovery is set forth in section 2017.010, subdivision (a): "Unless otherwise limited by order of the court. . ., any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." "Thus, '[f]or discovery purposes, information should be regarded as "relevant to the subject matter" if it might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement thereof.' [Citations.]" (*Cheek, supra,* 94 Cal.App.4th at p. 989.)

There are, however, numerous provisions in the discovery act that authorize the trial court to limit or restrict discovery that otherwise satisfies section 2017.010's "relevancy requirement." (*Bouton, supra,* 167 Cal.App.4th at p. 427). Section 2019.030, subdivision (a), for example, provides that the court may restrict the use of any discovery method if it determines that "(1) The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"; or "(2) The selected method of discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, and the importance of the issues at stake in the litigation." Section 2017.020, subdivision (a) additionally provides that the court shall "limit the scope of discovery if it determines that the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence."

18

These determinations are generally made through a motion for a protective order. (See §§ 2019.030, subd. (b); 2017.020, subd. (b).) The act contains similar "authorization[s] for the management of particular discovery methods." (*Cheek, supra*, 94 Cal.App.4th at p. 989; see also § 2025.420 [depositions]; § 2030.090 [interrogatories]; §2031.060 [inspection demands].)

In *Cheek, supra*, 94 Cal.App.4th 980, the appellate court explained that when applying these discovery management provisions in civil commitment proceeding under the SVPA, the trial court should take certain additional factors into account. The court explained that the SVPA's statutory scheme demonstrated that a SVP commitment proceeding is intended to provide an "expeditious adjudication" of "two narrow issues": (1) whether the person sought to be committed has been convicted of a qualifying sex crime, and (2) whether he or she has a mental disorder that makes it likely he or she "will engage in sexually violent criminal behavior." (*Id*. at pp. 989-990.) The court further explained that the "narrow scope" of the issues to be determined, and the need for an expeditious adjudication, were "legitimate considerations" that the trial court "must keep in mind" when exercising its authority to "manag[e] discovery in SVPA proceedings." (*Id*. at p. 991.)

Similar considerations apply in the context of CPRA proceedings. Like the SVPA, the CPRA is intended to "permit the expeditious determination" of a narrow issue: whether a public agency has an obligation to disclose the records that the petitioner has requested. (*County of Santa Clara v. Superior Court* (2009) 171 Cal.App.4th 119, 128 ["The sole purpose of such an action is to permit the expeditious 'determination of the obligation to disclose records requested from a public agency'"] [citing and quoting *Filarsky, supra*, 28 Cal.4th at p. 427].) Although many CPRA cases are likely to involve questions of law based on undisputed facts (including, for example, whether a particular type of record is subject to a disclosure exemption), other cases will require the court to make factual findings based on conflicting evidence. In some such cases, discovery may be necessary to test the agency's assertion that it does not have an obligation to disclose the records at issue. (See *Bernardi, supra*, 167 Cal.App.4th 1379 [discovery conducted to determine whether public agency constructively possessed the records of its subcontractor].) When a party does seek to compel discovery (or seeks a

19

protective order from a discovery request), the trial court must determine whether the discovery sought is necessary to resolve whether the agency has a duty to disclose, and to additionally consider whether the request is justified given the need for an expeditious resolution.

In assessing the permissible scope of discovery in a CPRA proceeding, trial courts may also look to federal case law addressing the use of discovery in cases arising under the FOIA.  It is well-established that because the CPRA "was modeled on [the FOIA]," the "judicial construction of the FOIA . . . 'serve[s] to illuminate the interpretation of its California counterpart.' [Citation.]"  (*Times Mirror, supra*, 53 Cal.3d at p. 1338; see also *County of Los Angeles v. Superior Court* (*Axelrad*) (2000) 82 Cal.App.4th 819, 825 [CPRA "was modeled on . . . [the FOIA].  The two enactments have similar policy objectives and should receive a parallel construction"]; *Motorola Communication & Electronics, Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1346, fn. 5 ["The [CPRA] was modeled on the FOIA.  Judicial construction of the latter is therefore instructive on our interpretation of its California counterpart"].)  Federal courts have consistently held that while discovery is permissible in FOIA cases, its use is more "limited" than in other types of civil actions.  (*Lane v. Department of Interior* (9th Cir. 2008) 523 F.3d 1128, 1134 ["While ordinarily the discovery process grants each party access to evidence, in FOIA . . . cases discovery is limited because the underlying case revolves around the propriety of revealing certain documents"].)  Federal courts have not adopted a uniform test to assess the propriety of discovery in FOIA matters.  They have generally found, however, that when the government has provided a detailed factual basis in support of its decision to withhold documents (generally through affidavits), discovery is warranted only if the plaintiff "makes a [sufficient] showing of bad faith," or is able to provide "tangible evidence" that the records have been improperly withheld.  (*Carney v. U.S. Dept. of Justice* (2d Cir. 1994) 19 F.3d 807, 812.)  Stated more simply, while discovery "may be appropriate when the plaintiff can raise sufficient question as to the agency's good faith in processing or in its search" (*Judicial Watch, Inc. v. Export-Import Bank* (D.D.C. 2000) 108 F.Supp.2d 19, 25), it is improper when "sought for the 'bare hope of falling upon something that might impugn the

[agency's evidence]." (*Public Citizen Health Research Group v. F.D.A.* (D.D.C. 1998) 997 F.Supp. 56, 73, reversed in part on other grounds in *Public Citizen Health Research Group v. Food & Drug Admin.* (D.C. Cir. 1999) 185 F.3d 898; see also *Accuracy in Media, Inc. v. National Park Service* (D.C. Cir. 1999) 194 F.3d 120, 124 [upholding denial of discovery based on "speculative criticism" of agency's search]; *Ocasio v. Dept. of Justice* (D.D.C. 2014) 67 F.Supp.3d 438, 440, fn. 6.)

Given the "clear legislative intent that the determination of the obligation to disclose records requested from a public agency be made expeditiously" (*Filarsky, supra*, 28 Cal.4th at p. 427), we adopt the general proposition set forth in these federal authorities. When assessing motions to compel discovery (or motions seeking a protective order) in CPRA proceedings, the trial court has discretion to consider whether the petitioner has made an adequate showing that the discovery is likely to aid in the resolution of the particular issues presented in the proceeding.

In concluding that the discovery act applies to CPRA proceedings, we acknowledge the City's concerns that allowing discovery in public records cases may impose increased burdens on government entities, and delay the process for obtaining public records. The City's contentions regarding the potential negative impacts of discovery in CPRA proceedings are, however, "'policy arguments that should be addressed to the Legislature.'" (*Cheek, supra*, 94 Cal.App.4th at p. 996 [the government's "arguments concerning the . . . impact of civil discovery in SVPA proceedings, including the increase in costs and delays, and the burden placed upon the trial court and the [Department of Mental Health], 'are policy arguments that should be addressed to the Legislature'"]; *Leake, supra*, 87 Cal.App.4th at p. 682.) Moreover, as discussed above, the burdens and delays that might result from a particular discovery request are factors the trial court may properly consider when exercising its authority to manage discovery in a CPRA proceeding.

### D. The City Acted with Substantial Justification in Opposing the Petitioner's Motion to Compel

The City argues that even if we conclude the trial court correctly determined the discovery act applies to CPRA proceedings, we should reverse

the portion of the order imposing discovery sanctions.  Under the discovery act, the trial court is required to "impose a monetary sanction . . . against any party . . . who unsuccessfully . . . opposes a motion to compel a further response to [a written interrogatory, inspection demand or request for admission], unless it finds that [the party] acted with substantial justification or that other circumstances make the imposition of the sanction unjust."  (See Code of Civil Proc., §§ 2030.300, subd. (d) [sanctions provision governing written interrogatories]; 2031.310, subd. (h) [sanctions provision regarding inspection demands]; 2033.290, subd. (d) [sanctions provision governing requests for admissions].)  The trial court concluded that discovery sanctions were warranted in this case because the City had "provided little if any support" for its argument that the discovery act did not apply to CPRA proceedings.  We review the trial court's sanction order for an abuse of discretion.  (*Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, 748 (*Diepenbrock*).)

Our courts have interpreted the term "substantial justification" to mean "well-grounded in both law and fact."  (*Doe v. U.S. Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.)  Thus, "to avoid sanctions, the deponent must show . . . [there were] reasonable grounds to believe the objection was valid or that the answer given was adequate."  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2016), ¶ 8:1964, p. 8M–7.)

Under the circumstances presented here, we find no basis for the trial court's conclusion that the City acted without substantial justification in opposing the petitioner's motion to compel.  As the City correctly notes, no prior decision has addressed "whether the Civil Discovery Act applies to a CPRA proceeding."  Nor have we identified any decision interpreting Government Code section 6259's provision that "[t]he court shall decide [whether to order disclosure] after examining," among other things, "any . . . additional evidence as the court may allow."  Although we agree with the trial court's conclusion that this language does not, as the City has asserted, exempt CPRA proceedings from the discovery act, we do not find the City's proposed interpretation to lack substantial justification.  Moreover, some federal cases addressing discovery in FOIA cases contain language

22

suggesting that discovery is only available under limited circumstances that are not present here. Finally, we note that the question whether a petitioner in a CPRA proceeding has a right to seek discovery is not only an issue of first impression, but also of important consequence to public entities that are responsible for responding to public records requests.

Given the unsettled nature of the issues presented, the existence of some federal authority that arguably supports the City's position and the importance of the issue raised, discovery sanctions were not appropriate. (Cf. *Diepenbrock, supra,* 208 Cal.App.4th at p. 749 ["while the court may properly have rejected plaintiff's contention concerning the scope of the exception to the marital privilege, the conflicting legal authority on an unsettled issue provided substantial justification for appellants' position, negating the basis for the sanction order"]; *Bruno v. Superior Court* (1990) 219 Cal.App.3d 1359, 1365 ["Although we agree with respondent court that discovery is not available in a small claims appeal, we find that the court abused its discretion in sanctioning petitioner's attorney for raising this issue of first impression"].)

### E. On Remand, the Trial Court Shall Allow the City to Assert Additional Objections to the Petitioner's Discovery Requests

The City also argues that the trial court erred in concluding that it has waived any further objections to the discovery, and therefore must respond to all of petitioner's discovery requests without further objection. The trial court's written order characterized the City's decision to object to the discovery solely on the basis that the discovery act does not apply to CPRA proceedings as a "risky tactic" that did not support a departure from the general "rule that an objection not raised in an initial response to discovery requests is waived."[7] The language of the trial court's order appears to require the City to respond to requests even if they are overbroad, or seek

---

[7] This portion of the court's written order appears to conflict with the court's statement at the motion hearing that it was only considering "whether discovery is available under the CPRA," and not "[the] question whether the discovery was necessary or not, so the court hasn't addressed that issue in its . . . ruling."

materials that are not directly relevant to this CPRA proceeding. The order also appears to require the City to disclose responsive documents that would otherwise be subject to the attorney-client privilege, or any other form of privilege.

The City acknowledges the discovery act contains provisions that require a party to raise all objections to a discovery request in the initial response. It argues, however, that these rules are inapplicable where the responding party has objected to discovery on the basis that the discovery act is inapplicable to the particular proceeding at issue. The City contends that under such circumstances, "[i]t would be illogical to object to discovery but at the same time also engage in the discovery process by asserting any and all other objections that might be applicable under the [discovery act]."

Although the parties have not identified any decision that has specifically addressed this issue, we find the court's resolution of a similar situation in *Cheek, supra*, 94 Cal.App.4th 980, to be instructive. In *Cheek*, the People filed a petition under the SVPA seeking to recommit the defendant to the Department of Mental Health. In response to the petition, the defendant issued deposition subpoenas to several mental health physicians who had submitted reports in connection with the defendant's previous SVPA commitment. The People filed a motion to quash the deposition notices, contending that civil discovery is not permitted in SVPA proceedings. The trial court denied the motion on the "ground that . . . civil discovery is permitted in SVPA proceedings. At no time in the . . . proceeding were any issues raised as to the propriety of the depositions, beyond the issue of whether civil discovery is authorized in SVPA proceedings." (*Id.* at p. 985.)

On appeal, the court affirmed the trial court's conclusion that the discovery act applied to SVPA proceedings, and provided additional guidance regarding the permissible scope of discovery in such a proceeding. The court further concluded that because the record was "inadequate for informed review concerning whether the depositions of [the mental-health physicians] [we]re within the permissible scope of discovery or whether the depositions [we]re properly subject to a protective order or a motion to quash," the trial court should "reconsider its rulings in accordance with those provisions of the

24

[discovery act] which authorize a trial court to exercise its discretion to manage civil discovery." (*Cheek, supra*, 94 Cal.App.4th. at pp. 994-995.)

We conclude that a similar outcome is appropriate here. Neither of the cases the trial court relied on in concluding that the City had waived any further objections to the petitioner's discovery requests involved a situation where the objecting party asserted the discovery act did not apply to the type of proceeding at issue. Moreover, both decisions were predicated on specific provisions within the act itself. In *Stadish v. Superior Court* (1999) 71 Cal.App.4th 1130 (*Stadish*), the court held that the party's failure to assert a trade secret privilege in its initial discovery responses constituted a waiver. In support, the court relied on language in former Code of Civil Procedure section 2031, subdivision (f)(3) (currently set forth § 2031.240, subd. (b)(2)) requiring that "[i]f an objection [to an inspection demand] is based on a claim of privilege, the particular privilege invoked shall be stated." (*Stadish, supra,* 71 Cal.App.4th at pp. 1140-1141.) In *Scottsdale Ins. Co. v. Superior Court* (1997) 59 Cal.App.4th 263 (*Scottsdale*), the plaintiff filed a timely response to a demand for production that included several specific objections. The objections did not, however, include any reference to the attorney-client privilege. As in *Stadish*, the court relied on former Code of Civil Procedure section 2031, subdivision (f)(3) in holding that the plaintiff's failure to assert an attorney-client privilege in its initial discovery responses constituted a waiver. (*Scottsdale, supra,* 59 Cal.App.4th at pp. 272-274.) In contrast to those cases, here, the City has argued that the entire discovery act, including its individual provisions regarding the manner in which a party must object to specific discovery methods, are inapplicable to CPRA proceedings. We agree with the City that when a party challenges the applicability of the discovery act, it is not subject to waiver principles that are grounded in specific provisions of the act.

We also believe that further discovery proceedings are warranted to permit the trial court to set boundaries on the permissible scope of discovery in this proceeding. (Cf. *Bouton, supra*, 167 Cal.App.4th at pp. 426-427 [where appellate court's decision had "only now clarified [what] the trial court must

25

decide in the [special] proceeding," "procedural fairness" required that the parties be permitted to conduct additional discovery].)[8]

## DISPOSITION

Let a peremptory writ of mandate issue commanding the superior court to vacate its order granting the petitioner's motion to compel, and to enter a new order granting only that portion of the motion regarding the petitioner's right to seek discovery in a CPRA proceeding. On remand, the court shall schedule further proceedings to consider any further objections the City may have to the petitioner's discovery requests. The temporary stay order is vacated. Each party shall bear its own costs for this proceeding.

ZELON, Acting P. J.

We concur:

SEGAL, J.

KEENY, J.[*]

---

[8] On remand, the trial court should consider any further objections the City may raise to the petitioner's discovery requests, and also consider the City's prior assertion that the discovery sought in this case is unnecessary given that: (1) another trial court has already ruled that VIIC data and Laserfiche scans are not public records, and the ruling was affirmed on appeal; and (2) the petitioner and her attorney have sought and obtained similar discovery in several non-CPRA cases brought against multiple law enforcement agencies.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26