Filed 10/10/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| COUNTY OF SAN BENITO,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN BENITO COUNTY,<br><br>    Respondent;<br><br>WESTERN RESOURCES LEGAL CENTER,<br><br>    Real Party in Interest. | H050285<br>(San Benito County<br> Super. Ct. No. CU-21-00204) |

When a party seeks pretrial discovery in a proceeding to enforce the California Public Records Act (Gov. Code, § 7921.000 et seq.),[1] "the trial court must determine whether the discovery sought is necessary to resolve whether the agency has a duty to disclose, and . . . additionally consider whether the request is justified given the need for an expeditious resolution." (*City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, 289 (*City of Los Angeles*).) San Benito County's petition for writ of prohibition calls for us to determine whether the " 'narrow scope' " of the issues to be determined in enforcement proceedings under the Public Records Act (*ibid.*) is expansive enough to permit real party in interest Western Resources Legal Center's motion to compel

---

[1] Undesignated statutory references are to the Government Code.

(1) production of the same public records ultimately at issue in its enforcement proceeding, and (2) supplemental interrogatory responses with a new explanation of the County's investigation of or failure to investigate the subject of the requested public records. Although the majority of Western's discovery requests were proper, we conclude the request to produce the same documents ultimately at issue in the enforcement proceeding and the interrogatories seeking a new narrative justification for the County's past decisions were improper. Accordingly, we will direct the trial court to modify its discovery order.

## I. BACKGROUND

### A. *Western's Allegations*

In its operative first amended complaint, filed in November 2021, Western sought (1) a writ of mandate compelling the County to produce the documents Western had requested in two prior public records requests; and (2) a declaration that the County's policies, practices, and procedures in responding to public records requests are unlawful. Western alleged the following as to the County's handling of the relevant two public records requests.

#### 1. *The Strada Verde Project*

In May 2021, Western requested records "about or related to" the "Strada Verde Project," a proposed development that was at the time of the public records request and the filing of the operative complaint the subject of a pending land use application. The request encompassed: (1) "[c]opies of all Public Records Act requests sent by anyone concerning or relating to the Project"; (2) "[a]ll writings received by the County concerning the Project"; (3) "[a]ll writings sent by the County to anyone else concerning the Project"; (4) "[a]ll writings concerning Frank Barragan"; (5) "[a]ll writings concerning Scott Fuller"; (6) "[a]ll text messages sent or received by Barbara Thompson or Joel Ellinwood relating to the Project"; (7) "[a]ll writings concerning local procedures relating to the County's consideration of general plan amendment applications"; and

2

(8) "[a]ll writings concerning potential offsite consequences resulting from events at the Trical, Inc. facility located in San Benito County."

In August 2021, the County stated it had produced all records responsive to the request, except attorney-client privileged communications. After Western identified shortcomings in the production, the County stated that it would commence providing additional records on a specified date the following month. The County did not provide additional records on that date.

Western accordingly claims that the County is withholding responsive records and delaying public access to information regarding development projects without specifying the scope of the records it plans to produce or the date by which it will complete production.

### 2. *Alleged Misconduct Relating to the Strada Verde Project*

In October 2021, Western requested documents "concerning or discussing" a presentation titled " 'San Benito Public Records Reveal Deception and Misconduct' " and investigations into said deception and misconduct. The presentation reportedly contained allegations that, in an effort to promote development, the County's staff were attempting to " 'bury' " a report suggesting that the potential for a major chemical release at a plant adjacent to the proposed Strada Verde Project site presented a serious risk to the public.[2] In addition to records "concerning or discussing" the presentation, Western sought "[a]ll writings concerning or discussing a formal investigation into the misconduct alleged in the [p]resentation" and "[a]ll reports or summaries setting forth the conclusions of any investigation into the misconduct alleged in the [p]resentation."

---

[2] In this Court, Western requests judicial notice of the underlying report. But the underlying report, bearing as it does on the broader controversy that occasioned the public records requests in the first instance, does nothing to illuminate the purely procedural issues raised by the discovery order here. We therefore deny the request. (See, e.g., *Grosz v. Cal. Dept. of Tax & Fee Administration* (2023) 87 Cal.App.5th 428, 447, fn. 12.)

3

The County responded to the request by stating that it " 'anticipate[d] providing nonexempt responsive records on a rolling basis beginning on November 19, 2021.' "  In subsequent correspondence, however, the County asked Western to accede to the search terms it proposed for identifying responsive records, and Western refused to do so.  As a result, the County informed Western that it was " 'unable to move forward with the search of emails responsive to [the second request]' " on the ground that Western " 'has not reasonably described the records it seeks.' "

Western verified the operative complaint on November 16, 2021—three days before the County stated that it would begin its rolling production of records responsive to the second request.  As of that date, Western alleged that the County had not provided it with records responsive to the second request, had not conducted a reasonable and adequate search in response to the second request, had not stated the scope of the documents it planned to produce or withhold, and had not stated when it planned to complete its production.  Western further alleged that this was representative of the County's "pattern and practice of dragging out and avoiding compliance with its Public Records Act responsibilities."  Western's prayer sought, among other relief, a judgment "order[ing] San Benito County to promptly produce all requested records," and a declaration "that San Benito County's policies, practices, and procedures [as to] . . . Public Records Act requests are unlawful" and that the County "has a pattern and practice of refusing to produce records in response to Public Records Act requests."

B.    *The Pretrial Discovery Dispute*

Within a month of commencing litigation, Western propounded interrogatories and requests for production of documents under the Civil Discovery Act (Code Civ. Proc., § 2016 et seq.).

Foremost among Western's requests for production of documents was a request for "[a]ll documents responsive to the [public records] request."  Western's special interrogatories included the following queries:  "Explain in detail what action, if any, was

4

taken to investigate the misconduct alleged in the Presentation" (Special Interrogatory 6); and "If no action was taken by the County to investigate the misconduct alleged in the Presentation, please explain why not" (Special Interrogatory 7).

Several months later, Western filed motions to compel further responses to its interrogatories and requests for production. The County opposed the motions.

In a written order after hearing, the trial court found that "[t]he requested discovery is calculated to lead to the discovery of admissible evidence" and granted Western's motions as follows. (1) "The County shall provide verified, amended responses, without objection, to Special Interrogatories Nos. 5, 6 and 7 within 21 days of the filing of this Order."[3] (2) "The County shall provide verified, amended responses, without objection, to Special Interrogatories Nos. 1, 2, 3, 4, 8 and 9 and Form Interrogatory 17.1, within 28 days of the filing of this Order."[4] (3) "The County shall

---

[3] Special Interrogatory 5: "Explain in detail your document retention (including management) practices or policies."

[4] Special Interrogatory 1: "Explain in detail and chronologically all steps taken by the County to search for the documents called for by the [public records] request, including emails, native files, and documents on personal accounts and devices of potential custodians." Special Interrogatory 2: "Identify by name and title each individual that assisted you in connection with searching for documents called for by the [public records] request, including emails." Special Interrogatory 3: "Explain in detail what steps you took to identify potential custodians of the documents and communications called for by the [public records] request." Special Interrogatory 4: "Identify each and every location or source that you searched for documents and communications called for by the [public records] request (e.g., computers and mobile devices, such as iPhones and iPads)." Special Interrogatory 8: "Explain in detail what steps the County took to search for the records called for by the second [public records] request, e.g., what potential custodians were contracted and when, what electronic devices were searched and when." Special Interrogatory 9: "Identify by name and title each individual that assisted you in connection with searching for documents called for by the second [public records] request." Form Interrogatory 17.1: "Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission" provide specified information.

5

provide amended written responses to Requests for Production, Set One, without objection, within 28 days of the filing of this Order."[5] (4) "The County shall produce all non-exempt records responsive to the Requests for Production, in their native format, within 28 days of the filing of this [Order]. Any redactions must be narrowly tailored." (5) "The County shall provide a code-compliant privilege log listing all documents as to which it claims a privilege, including all documents withheld based on any assertion that the records are exempted from disclosure under the Public Records Act, within 35 days of the filing of this Order."

The County timely petitioned this court for writ of mandate. We stayed the trial court's discovery order and issued an order to show cause why the petition should not be granted.

## II. DISCUSSION

The Public Records Act "establishes a basic rule requiring disclosure of public records upon request. [Citation.] In general, it creates a 'presumptive right of access to any record created or maintained by a public agency that relates in any way to the business of the public agency.' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616, fn. & italics omitted.) A " 'public record' " to which the act applies is "(1) a writing, (2) with content relating to the conduct of the public's business, which is (3) prepared by, or (4) owned, used, or retained by any state or local agency." (*Id.* at p. 617, italics omitted.) But the statute exempts some public records from disclosure.

---

[5] There were three additional requests for production in Set One, beyond the request for "[a]ll documents responsive to the [public records] request." Request for Production 2: "All documents identified by the County in response to Petitioner's first set of special interrogatories and first set of form interrogatories." Request for Production 3: "All documents concerning or discussing Petitioner's [public records] request." Request for Production 4: "All statements signed by officials stating that they have searched their personal devices and personal communications for potentially responsive [public] records."

6

(See, e.g., *id.* at p. 616; see also § 7922.000 [subject to justification, agency may withhold documents pursuant to an enumerated exemption or to a catch-all exemption applicable where "the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure"].) Moreover, the Public Records Act does not require a public agency "to generate new substantive content to respond to a . . . request. The rule means that, for example, agencies need not draft summary or explanatory material, perform calculations on data, or create inventories of data in response to a records request." (*National Lawyers Guild, San Francisco Bay Area Chapter v. City of Hayward* (2020) 9 Cal.5th 488, 502 (*National Lawyers Guild*).)

Under the Public Records Act, unless an exemption applies, a "state or local agency, upon a request . . . that reasonably describes an identifiable record or records, shall make the records *promptly* available to any person upon payment of [specified] fees." (§ 7922.530, subd. (a), italics added.) Barring "unusual circumstances" warranting a limited extension of time, however, an agency "shall, within 10 days from receipt of the request, . . . promptly notify the person making the request" whether the request seeks disclosable information and, if the information is disclosable, "shall also state the estimated date and time when the records will be made available." (§ 7922.535, subds. (a)-(b).) A public agency's "inability or unwillingness to locate and produce [the records] . . . is tantamount to withholding requested information from a [Public Records Act] request." (*Sukumar v. City of San Diego* (2017) 14 Cal.App.5th 451, 466 (*Sukumar*).)

The Public Records Act includes a private enforcement mechanism: "Any person may institute a proceeding for injunctive or declaratory relief, or for a writ of mandate, in any court of competent jurisdiction, to enforce that person's right under this division to inspect or receive a copy of any public record or class of public records." (§ 7923.000; see also § 7923.100 ["Whenever it is made to appear, by verified petition to the superior court of the county where the records or some part thereof are situated, that certain public

7

records are being improperly withheld from a member of the public, the court shall order the officer or other person charged with withholding the records to disclose those records or show cause why that person should not do so."].) "In a proceeding under Section 7923.000, the court shall set the times for hearings and responsive pleadings with the object of securing a decision as to the matters at issue at the earliest possible time." (§ 7923.005.)

The Civil Discovery Act applies to a proceeding to enforce the Public Records Act, as a special proceeding of a civil nature. (See *City of Los Angeles*, *supra*, 9 Cal.App.5th at pp. 284-287; see also Code Civ. Proc., § 2016.010; *People v. Yartz* (2005) 37 Cal.4th 529, 537, fn. 4.) A party's presumptive right to discovery is constrained by relevance, however: "Unless otherwise limited by order of the court . . . , any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017.010.) The court in *City of Los Angeles* accordingly took care to emphasize that the general "scope of discovery" in Public Records Act proceedings remained circumscribed by its relevance to the "narrow issue: whether a public agency has an obligation to disclose the records that the petitioner has requested. [Citations.]" (*City of Los Angeles*, *supra*, 9 Cal.App.5th at p. 289.)

We review a trial court's order granting or denying a motion to compel discovery for abuse of discretion. (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540 (*Williams*).) But "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.) In our review of discovery orders, "deference comes with two related

8

caveats." (*Williams*, *supra*, 3 Cal.5th at p. 540.) "First, ' "[t]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' . . ." ' [Citation.] An order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion." (*Ibid.*) Second, we remain "mindful of the Legislature's preference for discovery over trial by surprise," but we "may not use the abuse of discretion standard to shield discovery orders that fall short," even where " 'the order shows no such abuse on its face.' " (*Ibid.*)

As we will explain, certain of Western's discovery requests were properly oriented to the narrow issue presented in an enforcement proceeding under the Public Records Act, but two types of requests were improper: (1) the request for production of the very documents sought by the underlying public records request; and (2) interrogatories calling for the County to generate new substantive content that is beyond the scope of discovery relevant to the merits of a Public Records Act enforcement proceeding as a means to collect information that is not subject to disclosure under the Act. The availability of pretrial discovery in Public Records Act actions neither creates substantive disclosure obligations untethered to the narrow issue of whether the agency has a duty of disclosure nor provides an avenue for avoiding resolution of that fundamental question.

**A.** *Interrogatories and Document Requests Related to the Records Collection Process*

With respect to the majority of the discovery requests at issue here—Special Interrogatories 1-5 and 8-9, Form Interrogatory 17.1, and Requests for Production 2-4— the County raises only cursory relevance and mootness challenges. The trial court did not abuse its discretion in ordering the County to provide amended responses, without objection, to these requests.

**1.** *Mootness*

The County asserts that the trial court could not compel it to provide further responses to Requests for Production 2-4, Special Interrogatories 1-4 and 8-9, or Form

9

Interrogatory 17.1 as it relates to Requests for Admission 1 and 2 because the County supplemented its responses to those discovery requests while the motions were pending. We reject the County's assertion for the independent reason that the County has failed to support it with reasoned argument or citation to authority. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793; *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.) Moreover, to adopt the County's interpretation of the discovery act—that a party opposing a motion to compel further responses may unilaterally divest the court of authority to rule on the motion by serving a further response in the interim—would permit a party faced with a motion to compel to delay its adjudication indefinitely by successive supplemental but inadequate responses, each prompting a further motion to compel, each of which in turn would be defeated by piecemeal supplementation. (See generally *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 408-409 [addressing the filing of untimely interrogatory responses with a motion to compel pending]; Code Civ. Proc., §§ 2030.300, 2031.310.)

To the extent the County asserts that the trial court failed to evaluate the adequacy of the County's responses, as supplemented, the County's threshold claim that the trial court never reviewed the supplemental responses is unsupportable. The County provides no citation to the record, and our independent review of the hearing transcript of the hearing belies the claim. It is true that *the County* failed to submit its supplemental responses to the trial court, but Western promptly rectified that deficiency by providing the County's supplemental responses with its reply. The trial court accordingly informed the parties at the hearing on the motion to compel that it had "read the papers in support and opposition, and reply" and specifically asked Western to address "[w]hat remain[ed] of [its] request," noting that it "seem[ed] to [the court] that at least the majority of" the discovery "item-wise" "has been provided" and "addressed." We construe the trial court's order compelling the County to serve supplemental responses without objection

as signifying its agreement with Western that the County had not "even tr[ied] to defend" the objections and that the continuing objections retained in its supplemental responses "cloud[ed]" whether the County's responses as supplemented were "complete . . . or not." The trial court evaluated the County's supplemental responses, including its objections, and implicitly determined the objections were meritless. We find no abuse of discretion in this determination.

### 2. *Relevance*

The County argues that it was an abuse of discretion for the trial court to compel further responses to Special Interrogatories 1-5 and 8-9, Form Interrogatory 17.1, and Requests for Production 2-4 without considering the particular relevance of the requested discovery under *City of Los Angeles* to the "narrow issue[ of] whether a public agency has an obligation to disclose the records that the petitioner has requested." (*City of Los Angeles*, *supra*, 9 Cal.App.5th at p. 289.) For the implicit premise that the trial court failed to consider the particular relevance of the requested discovery to this litigation, the County relies on the absence of explanatory comment in the trial court's written order. Notwithstanding our conclusion, *post*, that the trial court erred in its resolution of some of the discovery issues, nothing in the record supports an inference that it failed here to consider the relevance and significance to this litigation of the discovery sought through these requests. (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [indulging "[a]ll intendments and presumptions . . . to support [order] on matters as to which the record is silent"].)

As to Special Interrogatories 1-4 and 8-9, Form Interrogatory 17.1, and Requests for Production 2-4, the County did not contend in the trial court that the discovery sought was beyond the scope of discovery appropriate under *City of Los Angeles*. The County having elected to stand on the sufficiency of its supplemental responses, it is neither surprising nor significant that the trial court did not discuss that issue in its written order.

11

Moreover, the trial court acted within its broad discretion to construe each of these requests as tailored to understanding and assessing the reasonableness of the County's ongoing search for responsive records. To borrow the County's own language, the County has offered "no analysis of [these] specific discovery request[s], no analysis of whether that request was proper in a [Public Records Act] proceeding, and no analysis of whether the discovery was necessary to resolve the narrow issues presented in a [Public Records Act] proceeding." It would serve no purpose for the trial court to provide a written discussion of such uncontested issues in its order, and we decline to adopt a rule that would so require. The trial court's determination that the requested discovery was calculated to lead to the discovery of admissible evidence is within its discretion, considering the scope of this proceeding.[6]

Turning to Special Interrogatory 5, through which Western sought information about the County's record retention policies, the County did offer a cursory relevance argument both in the trial court and before us. The County contends that it need not disclose its record retention policies and practices because the Public Records Act does not mandate retention policies or practices. (See *Los Angeles Police Dept. v. Superior Court* (1977) 65 Cal.App.3d 661, 668.) Western responded, both in the trial court and before us, that it required information about the County's record retention policies to evaluate for itself whether the County conducted a reasonable search for documents responsive to its public records request. We infer from the trial court's finding that "the

---

[6] The County argues that there is no point in supplementing its response to Form Interrogatory 17.1 as it relates to Request for Admission 3 because the County has responded by way of admission. This is immaterial: Form Interrogatory 17.1 relates to multiple requests for admission, which the trial court had no obligation to analyze in granular detail. We assume the County may be able to supplement its response to the interrogatory and thereby satisfy the discovery order without a substantive response to one of the interrogatory's several subparts. This would not, however, suggest the trial court abused its discretion in compelling a response to the interrogatory without objections.

12

requested discovery is calculated to lead to the discovery of admissible evidence" that the trial court found Western's contention persuasive.

Nor may we fairly characterize the trial court's ruling in this respect an abuse of discretion. Records retention policies may well inform Western's assessment of the reasonableness of the County's search for documents in response to its public records request. The County's argument that the Public Records Act does not dictate any substantive retention policy misses the point: Western is not seeking the County's retention policy to assess whether the policy failed to meet some substantive standard; Western is seeking the retention policy to assess whether the County conducted a reasonable search for records in response to Western's public records request.[7] Furthermore, the County has not articulated any basis for deeming the disclosure of its record retention policies unduly burdensome or otherwise problematic. The trial court accordingly did not abuse its discretion in determining that Special Interrogatory 5 is within the proper scope of discovery in this action.

**B.**      *(Re)Requesting Public Records as Pretrial Discovery*

As a legal matter, the parties here agreed that the County was obliged to produce all nonexempt documents responsive to the public records request and that the Civil Discovery Act applies to Public Records Act litigation. As a factual matter, the parties agreed that the County had yet to produce all responsive nonexempt documents, and Western has not challenged the County's representation that its keyword search for

---

[7] As we have noted, Western in its operative complaint pleaded a declaratory relief claim concerning the County's "policies, practices, and procedures" and prays for "a declaration to the effect that San Benito County's policies, practices, and procedures . . . are unlawful" and that the County "has a pattern and practice of refusing to produce records in response to Public Records Act requests." The breadth of this claim underscores the relevance of Special Interrogatory 5 to this proceeding. We find no fault in the trial court's determination that the County's document retention policies is likely to inform the court's ultimate assessment of Western's challenge to the County's pattern and practice in responding to public records requests.

13

responsive documents yielded 48,000 records to be reviewed. It is also undisputed that the County's "rolling production" timeline lacked either an end date or interim benchmarks for the expeditious completion of that review. Accordingly, among the ultimate issues to be adjudicated was whether these undisputed facts represented, as Western has alleged, an instance of the County's "dragging out and avoiding compliance with its Public Records Act responsibilities."

By its discovery motion, Western sought to compel production of "[a]ll documents responsive to the [public records] request." In granting the motion to compel, the trial court ordered the County to produce "all non-exempt records" subject only to "narrowly tailored" redactions and a "code-compliant privilege log" identifying all records the County was withholding as exempt from disclosure under the Public Records Act. Consistent with Western's proposed order, the trial court's order compelling production of "all non-exempt records" was not qualified or limited to records the County conceded were non-exempt. The trial court order included a 28-day deadline for production of the records and a 35-day deadline for production of the privilege log. As to all Western's discovery requests generally, the trial court ruled that "the months that have lapsed since Western Resources served the discovery requests have been more than sufficient for the County to supplement its responses (and they are far longer than the 30 days requested by Western Resources and contemplated by the Discovery Act, see Code of Civ. Proc. [§§] 2030.260, subd. (a) and 2031.030, subd. (c)(2).[)]"

We agree with Western and amicus curiae Better San Benito that it is necessary and appropriate for a trial court to manage Public Records Act litigation—as a matter of significant public importance—to achieve an expeditious resolution of the enforcement proceeding. (See *Sukumar*, *supra*, 14 Cal.App.5th at p. 466; §§ 7923.005, 7923.100.) But we reject their premise that strategic resort to the Civil Discovery Act is a

14

permissible shortcut to realizing Western's prayer for relief.[8]  Accordingly, we reverse that portion of the trial court's order compelling compliance with the Public Records Act by way of the Civil Discovery Act.

### 1.    *Availability of Writ Relief*

After the close of briefing, Western invited us to dismiss or summarily deny the petition on the ground that writ review is no longer necessary because the County "is now claiming to have complied with at least some portions of the discovery order," namely its production of the documents it deemed non-exempt and a *Vaughn* index.[9]  (Italics omitted.)

Western's characterization of the County's report, however, is materially inaccurate.  The County makes no claim of "hav[ing] complied with . . . the discovery order"; to the contrary, the County's claim is that—independent of the discovery order we stayed—it has at last complied with its obligations under the Public Records Act.  As we will explain, Western's conflation of means (the Civil Discovery Act) and ends (enforcement of the Public Records Act) is emblematic of the potential for abuse inherent in the breadth of Western's deployment of pretrial discovery.  "Writ review is appropriate in discovery matters where, as here, it is necessary to address 'questions of first impression that are of general importance to the trial courts and to the [legal] profession, and where general guidelines can be laid down for future cases.' " (*People v. Superior Court* (*Cheek*) (2001) 94 Cal.App.4th 980, 987.)

---

[8] Our holding does not foreclose a Public Records Act plaintiff, frustrated by a public entity's delay in producing undisputedly non-exempt documents, from obtaining redress from the courts.  We hold only that the procedure utilized here is improper.

[9] A *Vaughn* index is " ' "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." ' " (*American Civil Liberties Union of Northern California v. Superior Court* (2011) 202 Cal.App.4th 55, 83.)

15

## 2. *Merits*

The trial court's order compelling production of the requested records as a matter of pretrial discovery is significant in that it lays the groundwork for litigation of Public Records Act exemptions and the timeliness of production as a matter of discovery sanctions—encompassing issue, evidence, and terminating sanctions (see Code Civ. Proc., §§ 2023.010, subd. (g) & 2023.050)—rather than the merits of Western's properly pleaded allegations that the County both unreasonably delayed compliance and "improperly redacted information . . . that is not subject to any privilege or exemption from disclosure." (See Code Civ. Proc., § 2031.320, subd. (c).)[10] We disapprove this aspect of the trial court's resort to the Discovery Act for two reasons. First, the nonexempt documents are not themselves reasonably calculated to lead to the discovery of evidence admissible in this Public Records Act enforcement proceeding. Second, it allows Discovery Act procedures and penalties to supplant the specific legislative prescriptions in the Public Records Act for promptly resolving the disputes as to the scope of an agency's obligation to disclose public records in its possession.

The trial court was under no obligation to explain its reasoning, but absent an explanation, we are unable to discern how the trial court's order compelling production of the public records in response to Request for Production 1 meets the Civil Discovery Act's threshold requirement of "matter that either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence" as to the

---

[10] Although Western maintains that the trial court's order merely compels the County to produce documents that the County *concedes* are non-exempt, this is not what the order says. By the order's plain terms, the County must produce all non-exempt documents. Nor is the County the final arbiter of its own compliance with the order. Rather, a dispute between the parties as to compliance with a discovery order—such as the adequacy of production of non-exempt records—would ordinarily be presented to the court for resolution by still more discovery orders, whether to compel further responses or to impose sanctions.

16

narrow issues in dispute in an enforcement proceeding. (See Code Civ. Proc., § 2017.010; *City of Los Angeles*, *supra*, 9 Cal.App.5th at p. 289 [where enforcement proceeding turns on resolution of a factual dispute for which discovery is sought, the trial court must determine whether the discovery is necessary to resolve whether the agency has a duty to disclose].) Even Western and amicus Better San Benito now shrink from defending the relevance of Request for Production 1 under Code of Civil Procedure section 2017.010 and the narrow enforcement issue defined by *City of Los Angeles*: they instead merely rationalize the order as "a valid exercise of the trial court's case management authority" that "materially advances the PRA-mandated objective of moving the case quickly to the point where the merits can be fully adjudicated."[11] What the trial court issued, however, was not a case management order but the discovery order Western asserted was its due: the order drew exclusively on the authority of the Discovery Act together with the court's observation that the time elapsed since Western had propounded discovery had been "far longer than the 30 days . . . contemplated by the Discovery Act, see Code of Civ. Proc. [§§] 2030.260, subd. (a) and 2031.030, subd. (c)(2)."

Allowing a Public Records Act plaintiff to prosecute its public records request on a pretrial discovery motion allows the discovery process to preempt the adjudication of the merits of the litigation. We note that federal courts managing analogous Freedom of

---

[11] To the extent Western at oral argument relied on *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733 (*Golden Door*) and *Sukumar*, these authorities are readily distinguishable on this point. In *Golden Door*, it was not the Public Records Act but the parties' litigation under California Environmental Quality Act (Pub. Res. Code, § 21000 et seq.) on which the reviewing court relied in analyzing the disputed pretrial discovery. (*Golden Door*, *supra*, 53 Cal.App.5th at pp. 761-767.) In *Sukumar*, the proper scope of pretrial discovery was not at issue, only whether the City's voluntary provision of documents in connection with the deposition of its person most knowledgeable made plaintiff a prevailing party in the public records enforcement proceeding. (*Sukumar*, *supra*, 14 Cal.App.5th at p. 454.)

17

Information Act (FOIA) litigation have rejected discovery requests that "seek[,] under the guise of discovery, the same records which" the FOIA requests seek. (*Lawyers' Committee for Civil Rights of San Francisco Bay Area v. U.S. Dep't of the Treasury* (N.D. Cal. 2008) 534 F.Supp.2d 1126, 1137; see also *Tax Analysts v. I.R.S.* (D.C. Cir. 2005) 410 F.3d 715, 722 (*Tax Analysts*) ["courts must not grant FOIA plaintiffs discovery that would be 'tantamount to granting the final relief sought' "].)  We find these authorities persuasive.  (See *City of Los Angeles*, *supra*, 9 Cal.App.5th at pp. 289-290 [it is appropriate to look to federal FOIA cases to assess the permissible scope of discovery in a Public Records Act proceeding].)  To permit the tactic would "turn [the Public Records Act] on its head, awarding [the plaintiff] in discovery the very remedy for which it seeks to prevail in the suit."  (*Tax Analysts*, *supra*, 410 F.3d at p. 722.)

There is further reason to disapprove the inversion of means and ends:  discovery practice and litigation may, as appears to have occurred here, only delay adjudication of whether a public agency's open-ended "rolling production" of requested public records operates as an unlawful withholding of those records.  (Cf. *City of Los Angeles*, *supra*, 9 Cal.App.5th at pp. 288-289 [noting the trial court's discretion to limit or restrict even discovery responsive to the discovery act's relevance standard, where necessary to the "expedit[ed] resolution" the Public Records Act calls for].)

The order Western obtained from the trial court came at the expense of early adjudication of the threshold issue central to Western's operative pleading and consistently argued on appeal by Western and Better San Benito alike—that the County views itself as able to "block courts from swiftly adjudicating [Public Records Act] suits by trickling out records at a glacial pace over nearly two years" and that "delay is a favored tactic of public agencies that wish to keep their most sensitive acts out of the public eye."[12]  We recognize this potential for abusive delay, and we read in the Public

---

[12] We are unable to construe the trial court's finding that "more than sufficient" time had elapsed for the County to "supplement its [discovery] responses" as an effective

18

Records Act the Legislature's recognition of this same risk and the prescribed means of countering it.

The trial court was entitled to be unimpressed by the County's continuing failure to specify a meaningful schedule for compliance, especially on the heels of the County's unsuccessful demurrer asserting that Western's enforcement proceeding was premature. The trial court's recourse, however, was not to join Western in treating Public Records Act production as a species of pretrial discovery in a Public Records Act enforcement proceeding, but to orderly adjudicate the merits of the County's claimed inability to comply more expeditiously. In any proceeding, "[t]he court may . . . make an order . . . that the trial of any issue or any part thereof shall precede the trial of any other issue or any part thereof in the case . . . ." (Code Civ. Proc., § 598.) In an enforcement proceeding such as this one, the Legislature has specifically mandated that the court "set the times for hearings and responsive pleadings with the object of securing a decision as to the matters at issue *at the earliest possible time*." (§ 7923.005, italics added.) And upon a determination that the public entity has failed to meet obligations as basic as projecting a reasonably prompt schedule for compliance, the Public Records Act authorizes a trial court to "direct disclosure by a public official" independent of the Civil Discovery Act, with noncompliance thereafter punishable by contempt. (See § 7923.500, subd. (a); see also *Sukumar*, *supra*, 14 Cal.App.5th at p. 466 [unwillingness to locate and produce documents is tantamount to withholding documents]; §§ 7923.000, 7923.100 [authorizing enforcement action where documents are improperly withheld].)

_____

adjudication of the merits of the County's claimed inability to act more promptly under section 7923.500. We assume for this discussion that the County's delay was in fact inexcusable under any reasonable metric; we question only whether, when what was noticed for hearing was no more than Western's motion to compel further discovery responses, the County had sufficient notice and opportunity to be heard on this point, such that an adverse finding under section 7923.500 would have been procedurally correct.

Accordingly, the Public Records Act does not leave a plaintiff at the mercy of a public agency that is unreasonably or indefinitely delaying its production.

Particularly where, as here, the gravamen of the complaint was that the County was effectively withholding responsive records by means of delay and a refusal to state an estimated date and time for completion of its response, there was no impediment to the trial court's bifurcating the issue of the County's timeliness. It appears from the parties' briefing that, despite the lapse of time preceding the County's eventual production of records, there has been no determination whether that delay was proper under the Public Records Act. Western countered at oral argument that it first asked for a merits hearing in June 2022. But even if this were apparent from the record, this would have been months after Western filed its motion to compel and still longer since Western made its discovery request. We therefore have no basis to credit Western's assertion that its inapt resort to the Civil Discovery Act represents the only recourse for a Public Records Act plaintiff to hold a public agency to account. Accordingly, we conclude that a party seeking judicial enforcement of the Public Records Act may not reframe its public records request as a discovery request unconstrained by the narrow issue of whether the Public Records Act requires the public agency to disclose the records the petitioner has requested.

We emphasize the limited scope of our holding. None of the foregoing should be construed to prevent a trial court from managing Public Records Act litigation so as to, if necessary, set appropriate timelines for a public entity to complete its review and production of *undisputedly* non-exempt documents, provide its index of responsive exempt documents, or to complete any other discrete tasks in furtherance of the resolution of merits disputes.[13] (See *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367,

---

[13] We anticipate that in at least some cases where the schedule for production of undisputedly non-exempt records and a *Vaughn* index is in dispute, trial courts will be able to informally broker an accord through the case management process. Where, as

1376, italics omitted ["California courts have broad and inherent power to control matters before them"]; see also *Walker v. Superior Court* (1991) 53 Cal.3d 257, 266-267 ["We have often recognized the 'inherent powers of the court . . . to insure the orderly administration of justice.' . . . Although some of these powers are set out by statute ([Code of Civ. Proc.,] § 128, subd. (a)), it is established that the inherent powers of the Court are derived from the Constitution"].) A trial court remains free to promptly adjudicate whether a public agency has failed to comply with its obligations under the Public Records Act by slow-rolling its production of records or by refusing to propose an enforceable schedule for timely production; on an appropriate finding, it may craft remedies, including an order that the agency to meet a schedule for production.[14] Trial courts have the ability to manage a public records action, even one including a plaintiff's allegation of improper delay, consistent with the statutory directive to secure a decision as to the matters at issue at the earliest possible time (§ 7923.005)—by setting hearings on the merits and receiving argument and evidence on those merits (see, e.g., §§ 7923.005, 7923.105; *Antelope Valley Groundwater Cases* (2020) 59 Cal.App.5th 241, 273 ["A trial court has discretion to determine the order in which claims or issues are bifurcated and determined, and the selection and scheduling of those phased determinations will not be disturbed absent an abuse of discretion"])—without resort to a discovery order that exceeds the general scope of relevance to the ultimate issues in dispute. But when a trial court grants a motion to compel the public entity to produce, under the Civil Discovery Act, the same universe of documents sought by plaintiff's

occurred here, a plaintiff seeks formal redress, a phased merits hearing may prove necessary.

[14] To the extent that dilatory tactics by a public agency may increase the time and expense of litigation, we note that the statute contains a fee-shifting provision. (See § 7923.115.)

21

prayer for relief, the discovery order and its enforcement mechanism threatens to swallow the litigation whole.

## C.  *Other Interrogatories*

Dissatisfied with the County's limited and incomplete response to Western's requests for records of the County's investigation of alleged misconduct, Western asked the County via Special Interrogatories 6 and 7 to "[e]xplain in detail what action, if any, was taken to investigate" certain allegations of misconduct and, if no action was taken, to "explain why not."  Western contends that Special Interrogatory 6 is within the scope of discovery in this action because it "probe[s] the reasonableness of the County's . . . delay in providing records responsive to the second [Public Records Act] request."[15]  Western reasons that if it knows the form of the investigation, if any, it will be able to assess whether the County conducted a reasonable effort to identify documents.[16]  As noted above, the trial court found that all of the discovery requests were " 'calculated to lead to the discovery of admissible evidence.' "  Given the narrow question presented by a special proceeding under the Public Records Act, however, compelling the County to supply a detailed explanation of its investigation of allegations of misconduct exceeded the proper bounds of pretrial discovery because, with limited exceptions, it had no bearing on whether the County met its obligation to disclose records of the investigation (if any) it undertook.

---

[15] Although Western directs this argument to both Special Interrogatories 6 and 7, it relates only to Special Interrogatory 6—the interrogatory that calls for the County to disclose the form of the investigation it conducted, if any.  Special Interrogatory 7 addresses the separate issue of the County's reasons for taking a certain action if no investigation was conducted.

[16] At the same time, Western says that whether or not the County conducted an investigation, the County's response to the public records request is necessarily unreasonable—in Western's view, the County has either unreasonably delayed producing documents reflecting any investigation it may have undertaken or has unreasonably delayed disclosing that it has no documents if no investigation was ever initiated.

Some information about an investigation may be relevant in assessing the reasonableness of a public entity's efforts to collect response documents. This information could include the identity of the individuals participating in the investigation, the time period during which the investigation was completed, and the means by which the participants communicated with each other. Such information could go to the reasonableness of the custodians the public entity identified, the repositories searched, and the temporal scope of the search.

But creation of a detailed narrative of the investigation—let alone a defense of why no investigation was undertaken—exceeded the bounds of the trial court's discretion. Under the Public Records Act, such a description is the sort of "new substantive content" that public agencies are not required to generate to respond to a public records request. (*National Lawyers Guild*, *supra*, 9 Cal.5th at p. 502.) Under the Civil Discovery Act, we are unable to discern any reason why any details beyond those identified in the previous paragraph could be relevant to the narrow issue of whether the County has a complied with the Public Records Act. The interrogatory was therefore overbroad. Mindful that special interrogatories such as Special Interrogatory 6 may pose a heightened risk of circumventing the Public Records Act, we hold that the trial court abused its discretion in compelling a complete response that would go beyond the bounds of relevance for discovery purposes consistent with the claims at issue in this litigation. (See generally *Snibbe v. Superior Court* (2014) 224 Cal.App.4th 184, 190 [where relevance was supported as to only a portion of the material sought, trial court abused its discretion in ordering discovery more broadly].)

In so holding, we note the prodiscovery policies underpinning the Civil Discovery Act and "the Legislature's preference for discovery over trial by surprise." (See *Williams*, *supra*, 3 Cal.5th at p. 540.) But these policies are nonetheless cabined by the anticipated trial of the merits and " 'the legal principles governing the subject of [the] action.' " (*Ibid.*) Western has supplied us no basis to infer that the Legislature intended

23

pretrial discovery in Public Record Act litigation to become a vehicle by which a petitioner may secure information to which it has no substantive right under the statute and that will not assist in the enforcement litigation. (See *City of Los Angeles*, *supra*, 9 Cal.App.5th at p. 289.) The request that the County generate a narrative description of its response to a report of misconduct—where the only relationship to the merits of the Public Records Act litigation is that the alleged misconduct is the subject of the public records sought—fails the most liberal construction of relevance under Code of Civil Procedure section 2017.010. The trial court accordingly abused its discretion in compelling the County to provide one.

Nevertheless, we "prefer partial to outright denials of discovery." (*Williams*, *supra*, 3 Cal.5th at p. 540.) Consistent with the trial court's determination that Special Interrogatory 6 was—in some fashion—reasonably calculated to lead to the discovery of admissible evidence,[17] a subset of the information implicated by Special Interrogatory 6 may be relevant in assessing the reasonableness of the County's efforts to collect documents in response to Western's public records request. We will accordingly direct the trial court to vacate its order compelling a response to Special Interrogatory 6 and replace it with an order compelling the County to provide only the identity of the individuals involved in the investigation, if any; the time period during which any investigation was completed; and the means by which the individuals communicated with each other about the investigation.

---

[17] Although the trial court in its written order did not explain its reasoning specific to each discovery request, Western argued in the trial court that Special Interrogatory 6 "will assist in determining both the reasonableness of the search and the completeness of the County's response" by disclosing the "form, if any, of the investigation." Drawing all presumptions and intendments in favor of the order, we infer that the trial court deemed it appropriate to compel a response to Special Interrogatory 6 as it related to the County's handling of Western's public records request relating to the presentation.

24

As to Special Interrogatory 7, Western contends that "knowing the processes by which the County chose not to investigate (e.g., who was consulted, who decided, what discussions were had, and when they took place) will allow [it] to probe into whether the search process was reasonable." To begin, Western did not ask for the processes by which the County reached a substantive decision, but the reasons for the County's substantive decision. More to the point, if in fact the County declined to investigate the allegations of misconduct (as is necessary to implicate Special Interrogatory 7), we see no nexus between the rationale for such a decision and the County's handling of a request for public records of an investigation that never occurred. The subject matter addressed in Special Interrogatory 7 is thus irrelevant to the present enforcement proceeding and is information to which the Public Records Act provides no substantive right. (See *National Lawyers Guild*, *supra*, 9 Cal.5th at p. 502.) Accordingly, we will direct the trial court to vacate its order compelling the County to respond to Special Interrogatory 7.[18]

Our decision does not prevent a trial court from compelling production of information and documents requested under the Civil Discovery Act where reasonably calculated to lead to the discovery of evidence admissible in a hearing on the merits of the narrow issues presented in Public Records Act enforcement. And our decision should not be taken as an endorsement of the County's response to Western's public records requests. We hold only that the Civil Discovery Act, as a means to the end of adjudicating the merits of a special proceeding under the Public Records Act, is neither a substitute for adjudication of those merits nor an expansion of the universe of information the Public Records Act entitles the public to demand of a public agency.

---

[18] Even if the interrogatory could reasonably be recast as directed in part to process, the only relevance of such an inquiry would be in assessing the reasonableness of the County's search for responsive records with respect to custodians, repositories, and temporal scope. Because Special Interrogatory 6 already addresses those topics, we need not address the propriety of a partial but duplicative grant of the motion to compel a response to Special Interrogatory 7.

### III.    DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to set aside its order granting real party in interest's motion to compel and to issue a new order that, while otherwise consistent with the original order, (1) compels the County to provide only the identity of the individuals involved in the referenced investigation, the time period during which the investigation was completed, and the means by which the individuals communicated with each other, as to Special Interrogatory 6; (2) denies Western's motion to compel as to Request for Production 1; and (3) denies Western's motion to compel as to Special Interrogatory 7.  Upon issuance of the remittitur, the temporary stay is vacated.  In the interests of justice, the parties shall bear their own costs in this writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)

_____

LIE, J.


WE CONCUR:



_____

GREENWOOD, P.J.




_____

DANNER, J.




*San Benito County v. Superior Court*
H050285

Trial Court:                              San Benito County Superior Court
                                          Court No.:  CU-21-00204

Trial Judge:                             The Honorable Patrick K. Palacios


Attorneys for Petitioner                  Best Best & Krieger
San Benito County:
                                          Nicholas H. Pyle
                                          Dustin J. Nirschl



No appearance for Respondent.



Attorneys for Real Party in Interest      Lehotsky Keller
Western Resources Legal Center:
                                          Scott A. Keller
                                          Gabriela Gonzalez-Araiza


Amicus Curiae on Behalf of Real           Keker, Van Nest & Peters
Party in Interest Better San Benito:
                                          Bailey W. Heaps
                                          Jason S. George
                                          Eleanor F. Brock

*San Benito County v. Superior Court*
H050285