Filed 12/29/23  Regents of the University of California v. Superior Court CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF YOLO COUNTY,<br><br>Respondent;<br><br>PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE,<br><br>Real Party in Interest. | C099588<br><br>(Super. Ct. No. CV20210963) |

This petition for writ of mandate by petitioner the Regents of the University of California challenges two discovery rulings issued by respondent Yolo County Superior Court granting real party in interest Physicians Committee for Responsible Medicine's

1

motions to compel further responses to special interrogatories, set one, and request for production of documents, set one, in a California Public Records Act (Records Act) enforcement action (Gov. Code, § 7920.000 et seq.).[1] Petitioner claims that the broad discovery ordered by respondent court exceeds that permitted in a Records Act enforcement action because it is not necessary to resolve the narrow issue presented in such an action—whether the public agency has an obligation to disclose the records requested.[2] We agree.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2020 and April 2021, real party submitted two Records Act requests to petitioner, both of which sought records concerning research petitioner conducted in association with a private company, Neuralink Corp., at the California National Primate Research Center at the University of California, Davis. The first request sought: (1) "[a]ll Institutional Animal Care and Use Committee protocols related to research conducted in association with . . . Neuralink"; (2) "[a]ll veterinary records related to research conducted in association with . . . Neuralink"; (3) "[a]ll animal disposition records related to research conducted in association with . . . Neuralink"; (4) "[a]ll financial records related to research conducted in association with . . . Neuralink"; and (5) "[a]ll photo[graphs] and video footage related to research conducted in association

---

[1]     Further undesignated statutory references are to the Government Code.

[2]     The petition also sought an immediate stay of that portion of respondent court's orders compelling the production of material petitioner claims should be redacted or is privileged. This court denied the request for stay on October 5, 2023, pending receipt of opposition and further order of this court. Thereafter, petitioner notified this court that the parties had temporarily resolved the issues concerning redaction and privilege, and as a result, there was no need for this court to review those issues. Based on petitioner's representation and the lack of objection by real party, this court limits its review to whether the discovery ordered by respondent court exceeded the scope of that permitted in a Records Act proceeding.

2

with . . . Neuralink." The second request sought "[a] copy of the responsive records released to Wired magazine in 2019 and referenced in the magazine's July 17, 2019 article titled 'Here's How Elon Musk Plans to Stitch a Computer into Your Brain.' " Petitioner represents that it "released all the requested necropsy reports, animal disposition records, [California National Primate Research Center] protocols governing the activities in question, and a broad variety of other requested records." The only things it did not release were 371 photographs and one video recording, which it withheld as exempt. At real party's request, petitioner also provided an index identifying which records it withheld and its reasons for withholding them.[3] The index divided the withheld records into three categories: (1) 185 photographs "taken for purposes of prepar[ing] necropsy [(autopsy)] reports," which, "like photos taken for purposes of a human autopsy[,] can be graphic"; (2) 186 photographs taken by "Neuralink staff members . . . as Neuralink was performing proprietary research using its proprietary devices and technology"; and (3) a single video recording that "was inadvertently taken and contains footage of a floor and someone's foot." Petitioner asserted that each category of records was exempt from disclosure because the public interest in *not* disclosing the records clearly outweighs the public interest served in disclosure (see § 7922.000, former § 6255; Stats. 2021, ch. 614, § 2), and that the second category was exempt for the additional reason that the photographs are "Neuralink's proprietary records" (see § 7927.705, former § 6254, subd. (k); Stats. 2021, ch. 614, § 2).

---

[3]   The purpose of such an index, widely referred to as a " '*Vaughn* index,' " is to provide the party requesting the records with an adequate factual basis for contesting the withholding of documents as exempt. (See *American Civil Liberties Union of Northern California v. Superior Court* (2011) 202 Cal.App.4th 55, 82-83.) Depending on the circumstances of the case, this may also be accomplished through affidavits, "in camera review, or through a combination of these methods." (*Id*. at p. 83, italics omitted.)

Real party filed the underlying petition for writ of mandate in respondent superior court, seeking an order directing petitioner to produce *all* requested records, and thereafter served petitioner with 48 special interrogatories and 31 requests for production of documents. Petitioner objected to the discovery requests on various grounds, including that they were overly broad, "beyond the scope of the instant [Records Act] action[,] and beyond the scope of the discovery permitted in a Records Act action." Petitioner did, however, provide substantive responses to 24 of the special interrogatories, subject to and without waiving its objections.

Real party moved to compel further responses to 14 special interrogatories and the request for production of documents, arguing that the disputed discovery was necessary "to resolve factual issues related to whether the [petitioner] [has] a duty to disclose the records in dispute, including but not limited to (1) the extent to which [petitioner's] policy is to control, review, approve, and/or retain images and video produced at the [California National Primate Research Center] by private sponsors, inclusive of images and video stored on private sponsors' own hardware and/or software[;] (2) whether [petitioner] deviated from said policy as applied to Neuralink[;] (3) whether nonhuman primate suffering and death was caused by the [petitioner's] failure to adequately supervise Neuralink, such that the public interest in disclosure of the records is heightened[;] (4) whether the magnitude of nonhuman primate suffering and death in the experiments at issue is so great as to increase public interest in the disclosure of the records[;] and (5) whether the [petitioner] discussed [its] duty to disclose the records with Neuralink and/or withheld records at Neuralink's insistence." Petitioner opposed the motions, arguing that none of the discovery sought was necessary to resolve whether it had a duty to disclose the withheld records and that the index it produced contained all the information needed to litigate whether the claimed exemptions were permissible. Respondent court granted the motions in their entirety and directed petitioner to produce verified responses and responsive documents, without objections, within 10 days.

4

Petitioner represents that following respondent court's ruling, it produced the ordered information (5,500 pages) on an attorney's eyes-only basis so that it could seek writ review in this court and an order compelling real party to return the produced information should this court conclude the motions to compel were erroneously granted. This writ petition followed.

The petition for writ of mandate was filed on October 4, 2023. Real party filed a preliminary opposition on October 16, 2023, and petitioner filed a reply to the preliminary opposition on October 23, 2023. We subsequently advised the parties that we were considering issuing a peremptory writ of mandate in the first instance and provided additional time to file any further opposition. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171.) Real party filed an opposition to the petition on November 14, 2023, and petitioner filed a reply on November 21, 2023.

DISCUSSION

As real party correctly notes, pretrial writ review of discovery orders is generally disfavored absent exceptional circumstances, such as when the order will result in violation of a privilege or constitutional right, or unless an important issue of first impression is raised. (See *O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1439.) "The premise upon which this general policy rests is that in the great majority of cases the delay due to interim review of discovery orders is likely to result in greater harm to the judicial process by reason of protracted delay than is the enforcement of a possibly improper discovery order." (*Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 5.) That is not the case here. To the contrary, should this court not intervene at this juncture, it is anticipated that the case will continue to be bogged down by additional protracted discovery disputes as real party apparently has continued to propound discovery. To avoid additional delay and given the breadth of discovery ordered, this court elects to exercise its discretion and review the orders.

5

Under the Records Act, a "state or local agency, upon a request . . . that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of [specified] fees," unless a responsive record is exempt from disclosure under an express provision of the Records Act. (§ 7922.530, subd. (a); see § 7922.000.) The Records Act provides for specific exemptions (see, e.g., §§ 7923.600-7929.610) and a catchall exemption, which permits a public agency to withhold records if "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record" (§ 7922.000). Should a requestor believe a responsive record has been improperly withheld, they may enforce their right "to inspect or receive a copy of any public record" by "institut[ing] a proceeding for injunctive or declarative relief, or for a writ of mandate, in any court of competent jurisdiction." (§ 7923.000.) "The court shall decide the case after . . . :" (1) "[e]xamin[ing] the record in camera, if permitted by subdivision (b) of [s]ection 915 of the Evidence Code"; (2) "[e]xamin[ing] any papers filed by the parties"; and (3) "[c]onsider[ing] any oral argument and additional evidence as the court may allow." (§ 7923.105, subds. (a)-(c).)

While the Records Act does not contain any reference to discovery or the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.), in *City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, Division Seven of the Second District Court of Appeal held, as a matter of first impression, that the Civil Discovery Act applies to Records Act proceedings because such proceedings qualify as special proceedings of a civil nature, and "the Legislature has not included any exemption precluding discovery in such proceedings." (*City of Los Angeles*, at pp. 284-285; see also Code Civ. Proc., §§ 2016.020, subd. (a), 2017.010.) The scope of discovery permissible in a Records Act enforcement action, however, is more limited than in ordinary civil actions. (*City of Los Angeles*, at pp. 289-290.) Discovery in a Records Act enforcement action is circumscribed by the "narrow issue" presented in such actions, namely "whether [the]

public agency has an obligation to disclose the records . . . requested." (*City of Los Angeles*, at p. 289.) "Although many [Records Act] cases are likely to involve questions of law based on undisputed facts (including, for example, whether a particular type of record is subject to a disclosure exemption), other cases will require the court to make factual findings based on conflicting evidence. In some such cases, discovery may be necessary to test the agency's assertion that it does not have an obligation to disclose the records at issue." (*Ibid*.) Accordingly, when a party seeks pretrial discovery in a Records Act enforcement proceeding, "the trial court must determine whether the discovery sought is necessary to resolve whether the agency has a duty to disclose, and . . . additionally consider whether the request is justified given the need for an expeditious resolution." (*City of Los Angeles*, at p. 289; see also *City of San Benito v. Superior Court* (2023) 96 Cal.App.5th 243, 249.)

" ' "We review discovery orders under the abuse of discretion standard." ' " (*Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1493.) " ' "A trial court abuses its discretion when it applies the wrong legal standard[] applicable to the issue at hand." ' " (*Ibid*.)

Petitioner contends respondent court abused its discretion in granting the motions to compel because the discovery ordered exceeds the scope permitted in a Records Act enforcement action because it is not necessary to resolve whether petitioner has an obligation to disclose the records requested. According to petitioner, "the final necropsy reports and all the other records that [real party] already has, along with the . . . index that describes the photographs at issue and the rationale for withholding them, easily permit [real party] to litigate the exemption issue."

Real party "agrees that discovery is generally not needed in [Records Act] cases" but asserts that the discovery ordered here is both "necessary and appropriate in scope." Specifically, real party asserts that the discovery ordered by respondent court is tailored to address two questions that it claims are "essential to determining whether [petitioner]

7

has a duty to disclose": (1) whether the public interest in nondisclosure of the withheld records clearly outweighs the public interest in disclosure; and (2) whether petitioner "possesses," for purposes of the Records Act, additional photographs and/or video recordings, beyond those identified in its index.[4]

With respect to the first issue, real party states that it "seeks records related to factual disputes between the parties regarding the welfare of nonhuman primates in the experiments at issue and related protocol violations, and whether the [petitioner] failed to adequately supervise Neuralink to prevent such violations, which in turn are plainly related to the public interest in disclosure." Even assuming that information concerning the number of primate deaths and degree of primate suffering could heighten the public interest in disclosure of the photographs at issue and aid the court in balancing the competing public interests, the wide-ranging discovery ordered by respondent court is not *necessary* to resolve that issue. For example, respondent court directed petitioner to respond to real party's request for production of documents without objection. Request

---

[4] While real party frames the second question as whether petitioner "possesses, controls, and/or retains sponsor videos and photographs such that the records at issue are properly considered 'public records' under" section 7920.530, subdivision (a), its analysis focuses on whether petitioner possesses such records (see Discussion, *post* at pp. 8-9), which is a related, but separate issue. " 'Public records' " are defined in section 7920.530, subdivision (a) to "include[] any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." Possession is not mentioned. Upon receiving a public records request, however, an agency must determine whether the request "seeks copies of disclosable public records in the possession of the agency." (§ 7922.535, subd. (a).) In other words, "the duty set forth in . . . [former] section 6253, subdivision (c)[, now section 7922.535, subdivision (a) (Stats. 2021, ch. 614, § 2),] pertains to 'disclosable public records in the possession of the agency.' Thus, to be successful, [a petitioner] must establish that the files (1) qualify as 'public records' and (2) were in the possession of [the agency]." (*Consolidated Irrigation Dist. v. Superior Court* (2012) 205 Cal.App.4th 697, 709; see also *Freedom Foundation v. Superior Court* (2022) 87 Cal.App.5th 47, 58.)

Nos. 1 through 18 seek correspondence between Neuralink and petitioner from September 1, 2020, to the present, that includes certain specified terms, including " 'footage,' " " 'media,' " " 'erase,' " " 'trauma,' " " 'graphic,' " " 'disturbing,' " or " 'upsetting.' " Request No. 19 seeks "all non-privileged correspondence between Neuralink and [petitioner's] legal counsel from February 10, 2022, to the present." Special interrogatory No. 23 asks petitioner to describe "any and all instances in which Neuralink and [petitioner] communicated about public records requests concerning Neuralink's research." These requests are extremely broad and are not necessary to resolve whether the public interest served by not disclosing the withheld records clearly outweighs the public interest served by disclosure of the same. That the requests might possibly lead to the discovery of relevant evidence does not satisfy the standard set forth in *City of Los Angeles v. Superior Court*, *supra*, 9 Cal.App.5th at page 289. Moreover, to the extent real party already has all requested necropsy reports, animal disposition records, and protocols governing the activities in question, as petitioner claims to be the case, any need for discovery "regarding the welfare of nonhuman primates" for purposes of balancing the competing public interests is significantly diminished.

Real party also claims the discovery ordered by respondent court is necessary to determine whether petitioner "possesses, controls, and/or retains" additional videos and photographs, other than those identified in its index, which in turn is essential to determining whether petitioner has a duty to disclose such records. As this court understands real party's argument, petitioner reviewed all photographs and video footage taken by Neuralink staff as part of a mandatory policy " 'to ensure they compl[ied] with restrictions designed to protect animals, staff, and the integrity of research,' " before releasing such photographs and videos to Neuralink. Petitioner claims it "inadvertently retained" 186 photographs, which are identified as photographs 187 through 371 in petitioner's index, but released all other photographs and videos it reviewed to Neuralink and thus no longer possesses them. Real party seeks to test petitioner's assertion that it

9

no longer possesses these items, arguing an agency may constructively possess records it has the power to manage, direct, or oversee, even when the records exist outside the agency's walls or servers, and that petitioner has or at least had the power to manage, direct, or oversee the photographs and video footage in question based on its mandatory review policy. Accordingly, real party asserts that responses to the following discovery requests are necessary to determine whether petitioner possessed the photographs and video footage in question: (1) request for production of documents Nos. 20 and 23, which seek records related to the California National Primate Research Center's policy for reviewing photographs and video recordings by sponsors; (2) requests for production of documents Nos. 1 through 3, which seek correspondence between Neuralink and petitioner from September 1, 2020, to the present, that includes the terms "footage," "video," "photo," or "photograph"; and (3) its supplemental interrogatory No. 6, "which asks for an approximation of the number of Neuralink-produced photographs that [petitioner] reviewed pursuant to said policy."

While some limited discovery may be necessary to determine whether petitioner possesses additional disclosable public records beyond those it has already released or identified as exempt in its index, the broad discovery ordered by respondent court goes beyond what may be justified. Moreover, to the extent petitioner has already provided real party with the only existing policy concerning its review of photographs and set forth the circumstances surrounding its retention of the 186 photographs taken by Neuralink staff in its index, any need for additional discovery regarding petitioner's possession, control, or retention of additional photographs and video footage taken by Neuralink staff necessarily is reduced.

DISPOSITION

Having complied with the procedural requirements for issuance of a peremptory writ in the first instance, we are authorized to issue a peremptory writ forthwith and without oral argument. (See *Palma v. U.S. Industrial Fasteners, Inc.*, *supra*, 36 Cal.3d 171.) Let a peremptory writ of mandate issue directing Yolo County Superior Court to vacate its rulings granting real party's motions to compel and enter new and different orders that permit only such discovery as is "*necessary* to resolve whether the agency has a duty to disclose." (*City of Los Angeles v. Superior Court*, *supra*, 9 Cal.App.5th at p. 289, italics added.) In doing so, the court shall consider all the tools available to it in resolving the disclosure issue, including in camera review of the withheld records in accordance with section 7923.105, as well as the information contained in the records already released by petitioner. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.493(a)(1)(B).) This opinion shall become final forthwith in this court immediately upon filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).)


/s/ _____
ROBIE, Acting P. J.


We concur:


/s/ _____
RENNER, J.


/s/ _____
BOULWARE EURIE, J.

11